**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Ronald F. PAUL, Jr., Appellee.**

Superior Court of Pennsylvania.

Submitted Jan. 22, 2007.
Filed May 15, 2007.

 

Frank P. Barletta, Asst. Dist. Atty., Wilkes–Barre, for Com., appellant.

Nandakumar Palissery, Kingston, for appellee.

BEFORE: FORD ELLIOTT, P.J., HUDOCK and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 The Commonwealth of Pennsylvania appeals from the judgment of sentence entered on February 21, 2006, in the Court of Common Pleas, Luzerne County. Upon review, we vacate the judgment of sentence and remand for resentencing consistent with this Opinion.

¶ 2 The trial court aptly stated the facts as follows:

[Appellee] Ronald F. Paul, Jr., was arrested on or about August 6, 2005, on Information No. 2944 of 2005, by Sergeant Edward Palka of the Kingston Borough Police Department and charged with delivery of methamphetamine. The arrest occurred after [Appellee] had made a previous deliver[y] to Sergeant Palka on or about July 17, 2005, at a motel in Kingston Borough on Information No. 2943 of 2005.

[Appellee] pled guilty to both offenses on or about January 3, 2006. At the time of the plea hearing, the Commonwealth gave notice of its intention to seek a three (3) year mandatory minimum sentence based upon the amount of methamphetamine delivered on [the] August 6, 2005[ ] delivery,[1] that amount being commonly known as two "eight-balls" or an amount of 6.8 grams. The July 17, 2005 delivery consisted of an amount of 3.4 grams,[2] also of methamphetamine.

Between the time of the first and second arrests, Sergeant Palka had contacted [Appellee] several times to make the August 6, 2005 delivery. Sergeant Palka was told that [Appellee] was not interested in making any further deliveries, but Sergeant Palka's contacts were persistent in their efforts to have [Appellee] make the second sale to Sergeant Palka. Ultimately, [Appellee] made the sale to Sergeant Palka of the 6.8 grams quantity.

The sentencing guidelines require that the [trial] court impose a three (3) year mandatory minimum jail sentence upon conviction of a sale of methamphetamine in excess of 5.0 grams. [Appellee] contends that Sergeant Palka, in deciding what quantity to ask [Appellee] to supply of methamphetamine, purposefully asked for a quantity in excess of 5.0 grams such that the court would be required to impose the mandatory jail sentence outlined above. In doing so, [Appellee] argues the Commonwealth has committed and engaged in a sentencing entrapment. The standard range of sentencing for each delivery is 6 to 14 months and the statutory maximum penalty for the offense is 120 months.

Trial court opinion, 11/9/06, at 1–2.

¶ 3 The trial court determined that the Commonwealth acted improperly and en-

---

1. The trial court incorrectly listed the August 5, 2005 date of Appellee's first delivery of narcotics to Sergeant Palka as August 6, 2005, throughout its opinion.

2. The trial court states that the amount of the July 17, 2005 delivery was 3.4 grams of methamphetamine. However, the August 5, 2005 affidavit of probable cause listed the amount delivered as 4.1 grams.

trapped Appellee into making a sale of 6.8 grams of methamphetamine. Consequently, the trial court determined that the imposition of the mandatory minimum sentence of three (3) to six (6) years was inappropriate. Appellee was sentenced on February 21, 2006, to an aggregate sentence of twelve (12) to twenty-four (24) months in a state correctional institution. Appellee petitioned the trial court for a modification of sentence on March 2, 2006. On March 13, 2006, the trial court granted Appellee's motion for modification of sentence. Consequently, Appellee was granted permission for participation in a work release program. On March 23, 2006, the Commonwealth filed a notice of appeal from the trial court's February 21, 2006 order.[3] On April 3, 2006, the trial court ordered the Commonwealth to file a Pa. R.A.P. 1925(b) statement of matters complained of on appeal; it complied. In response, the trial court authored a Pa. R.A.P. 1925(a) opinion addressing the Commonwealth's matter complained of on appeal.

¶ 4 The Commonwealth presents one issue for our review:

Did the [trial] court abuse its discretion in finding that [Appellee] established a claim of sentencing entrapment?

*See* Brief for the Commonwealth, at 4.

■ ¶ 5 Unlike a challenge to the legality of sentence, the right to appeal a discretionary aspect of sentence is not absolute. *Commonwealth v. Kenner,* 784 A.2d 808, 810 (Pa.Super.2001) (citation omitted). Rather, a party who desires to raise such matters must petition this Court for permission to appeal and demonstrate that there is a substantial question that the sentence is inappropriate. *Id.,* 784 A.2d at 810–11; *see also* 42 Pa.C.S.A. § 9781(b). The determination of whether a particular issue constitutes a substantial question as to the appropriateness of sentence must be evaluated on a case-by-case basis. *Kenner,* 784 A.2d at 811 (citation omitted).

It is only where an aggrieved party can articulate clear reasons why the sentence imposed by the trial court compromises the sentencing scheme as a whole that we will find a substantial question and review the decision of the trial court. We will grant an appeal only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process. In fulfilling this requirement, the party seeking to appeal must include in his or her brief a concise statement of the reasons relied upon in support of the petition for allowance of appeal.

*Id.,* 784 A.2d at 811 (citations omitted).

■ ¶ 6 Initially, we note that the Commonwealth raised its objection at the sentencing hearing to the trial court's failure to sentence Appellee according to the sentencing guidelines. *See* N.T. Sentencing hearing, 2/21/06, at 7; *see also* Pa. R.Crim.P. 721(A)(2). Accordingly, we find that this issue has been preserved for appeal. *Commonwealth v. Oree,* 911 A.2d 169, 172 (Pa.Super.2006) (It is well settled that "issues challenging the discretionary aspects of sentencing must be raised in a post-sentence motion or by raising the

---

3. Pursuant to Pa.R.Crim.P. 721(B)(2)(a)(i), if the defendant files a post-sentence motion, the Commonwealth has thirty (30) days from the entry of the order disposing of the defendant's post-sentence motion to appeal the original order imposing sentence. This order was entered on March 13, 2006, and the Commonwealth filed its notice of appeal on March 23, 2006. Accordingly, we find this appeal to be timely.

claim during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived.") (citation omitted). Additionally, as noted above, this appeal was timely filed pursuant to Pa.R.Crim.P. 721(B)(2)(a)(i). However, the Commonwealth has failed to include a Pa.R.A.P. 2119(f) statement in its brief. Appellee does not object to this omission in his brief, and, therefore, we may address the merits of the discretionary sentencing claim. *Commonwealth v. Johnson*, 889 A.2d 620, 621 (Pa.Super.2005) (If an appellant fails to include a Pa.R.A.P. 2119(f) statement in his brief where it is required, and the appellee objects, a court may not consider the merits of the discretionary sentencing claim.). The Commonwealth challenges the trial court's decision to make a downward departure from the sentencing guidelines due to Appellee's claim of sentencing entrapment. We find that this claim raises a substantial question for our review. *Commonwealth v. Sims*, 728 A.2d 357, 359 (Pa.Super.1999) (*citing Commonwealth v. Childs*, 445 Pa.Super. 32, 664 A.2d 994 (1995) (Commonwealth presented substantial question when it contended sentence imposed was excessively lenient and unreasonably deviated from applicable guideline range), *appeal denied*, 544 Pa. 601, 674 A.2d 1066 (1996)). Accordingly, we address the Commonwealth's issue on the merits.

■ ¶ 7 Our standard of review in an appeal from the discretionary aspects of a sentence is well settled.

> [S]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the

> record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

*Kenner*, 784 A.2d at 811 (citations omitted).

¶ 8 The Commonwealth alleges that the trial court abused its discretion in finding that Appellee established a claim of sentencing entrapment. Sentencing entrapment or manipulation is a doctrine developed and adopted in several Federal Circuit Courts of Appeal. *Commonwealth v. Petzold*, 701 A.2d 1363, 1365 (Pa.Super.1997). Specifically, the First Circuit Court of Appeals in *United States v. Montoya*, 62 F.3d 1, 3 (1st Cir. 1995), determined that the sentencing manipulation doctrine may provide relief from mandatory sentencing. Further, the *Montoya* Court articulated the heavy burden placed upon defendants to prove sentencing entrapment or manipulation by stating the following.

> The standard is high because we are talking about a reduction at sentencing, in the teeth of a statute or guideline approved by Congress, for a defendant who did not raise or did not prevail upon an entrapment defense at trial. The standard is general because it is designed for a vast range of circumstances and of incommensurable variables. The most important of these, as we have stressed, is likely to be the conduct of the government, including the reasons why its agents enlarged or prolonged the criminal conduct in question.

> In other situations, the defendant's own predisposition may enter into the calculus, see *[United States v. ]Connell*, 960 F.2d [191, 196 (1st Cir.1992),]] speaking of conduct "overbearing the will of a person predisposed only to committing a lesser crime." But the analogy at sentencing to ordinary entrapment is not

often going to help a defendant who is arguing only about the number or size of the transactions. Having crossed the reasonably bright line between guilt and innocence, such a defendant's criminal inclination has already been established, and the extent of the crime is more likely to be a matter of opportunity than of scruple.

Because of the diversity of circumstances, we have declined to create detailed rules as to what is or is not undue manipulation but we think it is useful now to be very candid in saying that garden variety manipulation claims are largely a waste of time. Nevertheless, where a defendant wants to argue that there has occurred a sentencing manipulation amounting to "extraordinary misconduct," we think that the claim need not be limited to a request for a discretionary departure, that it applies to statutory mandatory minimums as well as to guideline ranges, and that it is subject to appellate review.

*Montoya*, 62 F.3d at 4 (citations omitted).

■■■■■ ¶ 9 The doctrine of sentencing manipulation set forth in *Montoya* was adopted by this Court in *Petzold*, 701 A.2d 1363. Sentencing manipulation occurs when "a defendant, although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment." *Id.*, 701 A.2d at 1365 (*citing United States v. Staufer*, 38 F.3d 1103, 1106 (9th Cir.1994)). It often is asserted in narcotics matters, typically reverse sting cases, in which government agents determine the amount of drugs a target will purchase. *Id.*, 701 A.2d at 1365. Sentencing entrapment or manipulation is similar to traditional notions of entrapment in that it requires extraordinary misconduct by the government. *Id.*, 701 A.2d at 1365 (*citing United States v. Egemonye*, 62 F.3d 425 (1st Cir.1995)).

However, it differs from classic entrapment in that it is not a complete defense to criminal charges and, therefore, cannot serve as a basis for acquittal. Instead, it provides a convicted defendant the opportunity for a reduced sentence, typically in the form of a downward departure from the sentencing guidelines. *Id.*, 701 A.2d at 1365 (*citing United States v. McClelland*, 72 F.3d 717 (9th Cir.1995), *cert. denied*, 517 U.S. 1148, 116 S.Ct. 1448, 134 L.Ed.2d 567 (1996)). It also can be used to exclude one of several criminal transactions included in a sentencing scheme. *Id.*, 701 A.2d at 1365 (*citing Connell*, 960 F.2d 191). It may even provide relief from a mandatory sentence. *Id.*, 701 A.2d at 1365.

¶ 10 Additionally, we noted in *Petzold* that:

> The benefits of reverse sting operations, i.e., ferreting out those who are ready, willing and able to engage in crime, must be balanced against the danger of granting law enforcement officials unlimited power to define the scope of criminal culpability in a given case. The fact that a single officer in the field can determine the amount of drugs in a case, and, therefore, the length of sentence for a defendant, is a troubling scenario. Such awesome power cannot go unchecked.

*Id.*, 701 A.2d at 1366.

■■■■■ ¶ 11 Further, due process is indeed violated where government conduct is "so grossly shocking and so outrageous [that it] violates the universal sense of justice." *Petzold*, 701 A.2d at 1366 (citation omitted). Additionally, we noted in *Commonwealth v. Nelson*, 446 Pa.Super. 240, 666 A.2d 714, 718 (1995), that the establishment of a due process violation "generally requires 'proof of government over[-]involvement in the charged crime and proof of the defendant's mere passive connection to the government orchestrated

and implemented criminal activity.' " *Id.,* 666 A.2d at 718 (citations omitted). Moreover, for due process to bar a conviction, the government's involvement in the commission of the crime "must be *malum in se* or amount to the engineering and direction of the criminal enterprise from beginning to end." *Id.,* 666 A.2d at 718 (citations omitted) (italics added).

■ ¶ 12 Simply put, sentencing entrapment or manipulation is difficult to prove, it is not established "simply by showing that the idea originated with the government or that the conduct was encouraged by it ... or that the crime was prolonged beyond the first criminal act ... or exceeded in degree or kind what the defendant had done before." *Petzold,* 701 A.2d at 1366 (citation omitted).

■ ¶ 13 After review of the record, we determine that the trial court erred in finding "extraordinary misconduct" on the part of the Commonwealth under these circumstances. The trial court based its finding of sentencing entrapment on the fact that although Appellee was predisposed to committing the first delivery, he had no intention to commit the second delivery of a greater amount of narcotics until he was "prompted repeatedly" by Sergeant Palka to do so. *See* Trial court opinion, 11/9/06, at 2. Additionally, the trial court stated that Appellee made the delivery only after several attempts by the informants to compel him to do so coupled with the fact that he hoped to do a favor for a friend. *Id.,* at 2–3. Specifically, the informants fabricated a story indicating that they would receive free crack cocaine from Sergeant Palka in exchange for Appellee's delivery of methamphetamine. *Id.,* at 3.

¶ 14 In the absence of a great disparity between the 3.4 grams of methamphetamine distributed at the July 17, 2005 transaction and the 6.8 grams of metham-

phetamine distributed at the August 8, 2005 transaction, we are not convinced that Appellee had no predisposition to commit the greater offense. *See Petzold,* 701 A.2d at 1363 (Sentencing manipulation occurs when a defendant, although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment.). The reasons articulated by the trial court to support its finding of sentencing entrapment include that Sergeant Palka encouraged Appellee to sell him two "eight balls," and that the Commonwealth prolonged the arrest beyond the first criminal act in which Appellee distributed 3.4 grams of methamphetamine. As noted above, this is not enough to establish sentencing entrapment. *Id.,* 701 A.2d at 1366 (sentencing entrapment not established by showing government encouraged conduct or that crime was prolonged beyond first criminal act).

¶ 15 Accordingly, we find that Appellee did not meet the high standard of proving "extraordinary misconduct" on the part of the Commonwealth under these circumstances. Therefore, we find that the trial court abused its discretion in administering a downward deviation from the sentencing guidelines based upon a finding of sentencing entrapment. Thus, we vacate Appellee's February 21, 2006 judgment of sentence and remand to the trial court for resentencing consistent with this Opinion.

¶ 16 Judgment of sentence vacated. Case remanded for resentencing consistent with this Opinion. Jurisdiction relinquished.