J-S26041-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ARTHUR SPAIN, | : | |
| | : | |
| Appellant | : | No. 3413 EDA 2014 |

Appeal from the Judgment of Sentence September 5, 2014
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No(s): CP-51-CR-0011239-2013

BEFORE:    OLSON, STABILE, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED MAY 16, 2016**

Arthur Spain (Appellant) appeals from the September 5, 2014 judgment of sentence of five to ten years' imprisonment imposed following numerous convictions for, *inter alia*, aggravated assault and conspiracy to commit aggravated assault.  After review, we affirm Appellant's judgment of sentence in part, vacate in part, and remand for resentencing.

The trial court set forth the relevant factual background of this case as follows.

> On July 1, 2013, at approximately 11:00 p.m., Michael Mucerino [the complainant] was at home, with his grandson, Ryan Spivey ("Ryan") when he heard girls fighting/arguing up the street.  The fight/argument worked its way down the street, to the front of Mr. Mucerino's house. Looking out his front door window, Mr. Mucerino saw a girl being badly attacked by a group of females that were each hitting the girl, at different times.  Mr. Mucerino, who was 62 years old, called the police.  He then went outside and stood on his front porch, where he saw a group of

*Retired Senior Judge assigned to the Superior Court.

females throw the girl against the hood of a van. The girl was lying on the ground and she looked unconscious. Mr. Mucerino walked off the porch, to look at the girl. He was concerned that the group of females was going to kill her.

When Mr. Mucerino came off the porch, the group of females initially backed off and walked away. They then turned around and started hollering at Mr. Mucerino. Two of the females were yelling, "[m]ind your own business. Get in the house. She's getting what she deserves." At that point, a white vehicle pulled up and three black males exited the vehicle. All three males walked towards Mr. Mucerino. A male with dreadlocks and a red shirt walked in front and the other two males walked behind him. The females were yelling, "Get him. Get him." Mr. Mucerino was looking around to see who the males were supposed to get, when he was punched in the face. Five seconds later, he got punched again. At this point, his upper pallet shattered; his teeth were floating inside his mouth.

Mr. Mucerino believed that the first two punches were delivered by the male with dreadlocks and the red shirt; he was the first male to reach Mr. Mucerino and the closest to Mr. Mucerino. After the second punch, Mr. Mucerino put his arms up and he tried to get into his house. However, he got grabbed and thereafter, he was hit 20 to 25 times, primarily in the face. He could not see who was hitting him; he [was] covering up, trying to protect himself. Ryan eventually grabbed Mr. Mucerino and pulled him into the house. The males tried to get into the house, to continue the attack but, for some reason— possibly the arrival of the police— they broke off. Mr. Mucerino went to the sink and at that point, the police arrived. Mr. Mucerino was bleeding profusely. While talking to the police, Mr Mucerino went to clear his nose and as he did, a body part came out of his nose.

The police took Mr. Mucerino to the hospital, where he underwent a CAT scan. He was then transferred to Temple Hospital. After being released from the hospital, Mr. Mucerino underwent surgery— his nasal passage was replaced and four metal plates were implanted in the upper part of his mouth. He is still recuperating from the surgery. He also sustained multiple other fractures, in the facial area, that had to heal on their own. He had to have his eye checked for floating fragments. He had to have his glasses repaired because they were broken in the

incident. He has pain every day. His teeth are misaligned and his mouth is deformed. He has difficulty eating, breathing and talking. The doctors recommended that his jaw be re-broken, to straighten everything …

At trial, Ryan pointed to [Appellant] and identified him as one of the aforementioned three males. Ryan described [Appellant] and the other two males, as they [appeared] on July 1, 2013— [Appellant] had dreadlocks and he was wearing a red T-shirt … Ryan also identified [Appellant] as the first person to take action.

Trial Court Opinion (TCO), 9/8/2015 at unpaginated 2-5 (footnotes and citations removed).

On July 3, 2014, Appellant was arrested for his role and charged with *inter alia*, aggravated assault, attempted burglary, conspiracy to commit aggravated assault, criminal mischief, simple assault, and recklessly endangering another person. On May 22, 2014, Appellant waived his right to a jury trial and proceeded to a bench trial. On that same day, the trial court found Appellant guilty of the aforementioned crimes. On September 5, 2014, the trial court sentenced Appellant to a term of incarceration of five to ten years for aggravated assault, and a concurrent term of five to ten years for conspiracy to commit aggravated assault. No further penalties were assessed as to the remaining crimes. Appellant timely filed post-sentence motions challenging the weight and sufficiency of the evidence, as well as a motion for modification of sentence on September 12, 2014. All motions

were denied following a hearing held on November 25, 2014. This timely-

filed appeal followed.[1]

Appellant states the following issues for this Court's consideration:

When it imposed an aggregate term of total incarceration in a state institution for a period of 5 to 10 years, did not the [trial] court abuse its discretion and impose an unduly harsh, manifestly excessive and unreasonable punishment in contravention of the general standards set forth by 42 Pa.C.S.[] § 9721, because it failed to adequately examine and consider [Appellant's] background, character and rehabilitative needs and [Appellant's] mitigation evidence, and improperly weighed against those factors the seriousness of the complainant's injuries, which was already accounted for in the offense gravity score?

Did not the [trial] court abuse its discretion by sentencing [Appellant] to a term of total incarceration in a state institution for a period of 5 to 10 years for the charge of conspiracy, where the sentence exceeded the aggravated range for that offense under the sentencing guidelines and the court failed to state adequate reasons for sentencing above the aggravated range?

Appellant's Brief at 3.

Appellant's questions challenge the discretionary aspects of his

sentence. Accordingly, we bear in mind the following.

It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal.

Before [this Court may] reach the merits of [a challenge to the discretionary aspects of a sentence], we must engage in a four part analysis to determine: (1) whether the appeal is timely [filed]; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of

---

[1] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.... [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

***Commonwealth v. Disalvo***, 70 A.3d 900, 902 (Pa. Super. 2013) (citations omitted).

The record reflects that Appellant timely filed a notice of appeal and that Appellant preserved the issues by timely filing a motion for reconsideration of his sentence. Moreover, Appellant has included in his brief a statement pursuant to Pa.R.A.P 2119(f). We now turn to consider whether Appellant has presented substantial questions for our review.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. ***Commonwealth v. Paul***, 925 A.2d 825, 828 (Pa. Super. 2007). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (citation and quotation marks omitted).

In his 2119(f) statement, Appellant asserts that the trial court failed to "adequately examine and consider the background, character and rehabilitative needs and the [Appellant's] mitigation evidence." Appellant's

Brief at 16. This Court has long held that a trial court's failure to consider adequately mitigating factors does not raise a substantial question. **See Commonwealth v. Disalvo**, ("[T]his Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review.") (quoting **Commonwealth v. Downing**, 990 A.2d 788, 794 (Pa. Super. 2010)).

While the trial court's failure to consider adequately mitigating factors does not raise a substantial question for our review, Appellant's averment that the trial court double counted the injuries of the victim by improperly weighing "the seriousness of the [victim's] injuries, which [were] already accounted for in the offense gravity score," does. **See Commonwealth v. Goggins**, 748 A.2d 721, 732 (Pa. Super. 2000) ("When fashioning a sentence, a sentencing court may not 'double count' factors already taken into account in the sentencing guidelines.") **See also Commonwealth v. Tirado**, 870 A.2d 362, 365 (Pa.Super. 2005) (finding appellant raised a substantial question for the Court's review when claiming that the trial court "considered factors already included in the guidelines.").

Appellant contends that the trial court erred in focusing on the degree of the injury suffered by the victim when it imposed a sentence of incarceration in the aggravated range because the guidelines assigned an

offense gravity score of 11,[2] taking into account that the victim suffered serious bodily injury. Appellant avers that the trial court's reliance on the victim's injuries and the failure to weigh all additional factors such as protection of the public, the gravity of the offense, and the rehabilitative needs of Appellant was an abuse of discretion.

Upon review of the record, this Court finds the trial court did not double count the victim's injuries. As correctly cited by Appellant, serious bodily injury is defined as "bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. While it did note the extensive, life-changing injuries suffered by the victim, the trial court spoke at length during sentencing about the nature of the crime and the impact the crime had on both the victim and his family. At sentencing, the trial court stated that the way the victim was beaten was the "most brutal" he had seen in his three years on the bench. N.T. 9/5/2014 at 24-25. Specifically, the trial court noted that the victim was beaten after he risked his own well-being to pull to safety a woman whom he saw being "pummeled on the street" in front of his home. *Id.* at 25. For

---

[2] The offense gravity score was assigned due to Appellant's conviction of aggravated assault where serious bodily injury occurred. *See* 204 Pa. Code § 303.15.

those "heroic efforts" the trial court found the Appellant and his friends beat the victim, a man in his 60s, "to a pulp." *Id.*

Appellant fails to make a cognizable argument, or cite any authority to support the contention that the individual nature of the crime, the age of the victim, the impact to the victim and his family, and the events surrounding the incident are incorporated as factors that comprise the guidelines. *See Commonwealth v. Wall,* 926 A.2d 957, 967 (Pa. 2007) (holding that the defendant "offered no legitimate basis to presume" that individual factors of the case "are subsumed within the sentencing guidelines"). Furthermore, we note that the trial court ordered and received a pre-sentence report (PSI) prior to sentencing.[3] "[W]here the sentencing judge had the benefit of a PSI, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Boyer*, 856 A.2d 149, 154 (Pa. Super. 2004).[4] We are not persuaded by Appellant's

---

[3] The trial court stated that prior to sentencing, the court "considered the PSI report, the sentencing guidelines, facts of the case, the information provided to the [trial court] at the sentencing hearing, including [Appellant's] counsel's reading of character evidence proffered by members of the community and a family friend, the Commonwealth's reading of victim impact evidence proffered by the victim['s] grandson, the testimony of the victim's wife and the testimony of [Appellant], who elected to allocate [sic]". TCO, 9/8/2015, at unpaginated 13.

[4] At sentencing, the trial court noted the impact the crime had on the victim and his family. N.T., 9/5/2014 at 25. The trial court also found Appellant's apology at sentencing to be "disingenuous and proffered for the sole purpose of obtaining mercy" and that Appellant's statement at sentencing "that he

argument that the trial court double counted the victim's injuries when imposing Appellant's sentence, as the record indicates otherwise.  No relief is due.

Lastly, Appellant argues that the trial court abused its discretion by failing to state adequate reasons on the record for sentencing Appellant to a concurrent five to ten year sentence for conspiracy, which is above the aggravated range of his sentencing guidelines.  Such a claim raises a substantial question.  **See Commonwealth v. Garcia-Rivera**, 983 A.2d 777, 780 (Pa. Super. 2009) ("This [C]ourt has found that a claim the trial court failed to state its reasons for deviating from the guidelines presents a substantial question for review.").

Regarding the merits of Appellant's claim, we are guided by this Court's opinion in **Commonwealth v. Byrd**, 657 A.2d 961 (Pa. Super. 1995).  In **Byrd**, the trial court stated, on the record, its reasons for sentencing Byrd in the aggravated range of the sentencing guidelines.  However, the record reflected that the trial court actually sentenced Byrd in excess of the aggravated range.  Thus, on appeal to this Court, Byrd argued that the trial court abused its discretion by misapplying the sentencing guidelines and by failing to provide sufficient reasons for sentencing him outside of the guidelines.

---

thought he was doing the right thing, protecting his family" "demonstrated to the [c]ourt that [Appellant] did not, or could not, appreciate the criminality of his conduct."  TCO, 9/8/2015, at unpaginated 14.

This Court responded to Byrd's argument as follows.

> While deviation from the guidelines is permitted, the Sentencing Code requires that the court place of record its reasons for such deviation. The Superior Court has held that
>
> > [a]t the minimum, the court must indicate that it understands the sentencing guideline range, in those cases in which the court deviates from the guidelines.
> >
> > As noted above, in every case where sentence has been imposed, the court then must make as part of the record and disclose in open court at the time of sentencing, a statement [of] the reasons for the sentence. However, the Sentencing Code imposes an additional requirement where the sentence is outside the guidelines and that is there must be a contemporaneous written statement of the reasons for deviation from the guidelines. Where the trial judge deviates from the sentencing guidelines ... he must set forth on the record, at sentencing, in the defendant's presence, the permissible range of sentences under the guidelines and, at least in summary form, the factual basis and specific reasons which compelled the court to deviate from the sentencing range. The Act states that failure to provide an appropriate contemporaneous written statement shall be grounds for vacating the sentence and resentencing the defendant. In the instant case the court did not advise the defendant what the sentencing guidelines provided as far as the range of sentence, and did not state why he deviated from the sentencing guidelines.
>
> [Byrd's] sentencing transcript reveals that the sentencing court failed to set forth in [his] presence the permissible range of sentences under the guidelines. Moreover, while the sentencing court did provide reasons for the sentence imposed, these reasons were advanced to support a sentence in the aggravated range. Nowhere did the court indicate that it was in fact sentencing [Byrd] outside of the guidelines and provide a contemporaneous statement of its reasons for such deviation….

- 10 -

***Byrd***, 657 A.2d at 963-64 (citations omitted). For these reasons, this Court vacated Byrd's sentence and remanded to the trial court for resentencing.

Here, it is uncontested that Appellant was sentenced outside the aggravated range for conspiracy to commit aggravated assault, as both the trial court[5] and the Commonwealth[6] acknowledge the above-guideline sentence. At the beginning of Appellant's sentencing hearing, the trial court properly stated the standard, mitigated, and aggravated ranges for aggravated assault. N.T., 9/5/2014 at 5. However, the trial court never mentioned what the ranges were for Appellant's conspiracy conviction.[7] In other words, the court failed to set forth in Appellant's presence the permissible range of sentences under the guidelines.

Moreover, while the trial court provided reasons for the sentence it imposed, those reasons were advanced to support a sentence in the aggravated range. ***Id.*** at 26 ("I am in agreement with the DA that nothing

---

[5] ***See*** TCO, 9/8/2015 at unpaginated 12 ("[The trial court] imposed … a concurrent sentence of five 5 [sic] to 10 years' incarceration for conspiracy (beyond the aggravated range)").

[6] ***See*** Commonwealth's Brief at 5 ("The [trial court] properly explained its concurrent, above guideline range sentence for criminal conspiracy …")

[7] Appellant had a prior record score of zero and Appellant's conspiracy to commit aggravated assault conviction carried a gravity score of 10. Thus, the sentencing guidelines dictate that: the standard minimum sentence in this case is 22-36 months of imprisonment; the mitigated range is 10 to 22 months of imprisonment; and the aggravated range is 36-48 months of imprisonment. 204 Pa.Code § 303.16(b).

but an aggravated sentence in this case is needed."). Furthermore, after defense counsel questioned the sentence as outside the guideline range, the trial court reiterated its position that it was sentencing Appellant within the guidelines. *See* N.T., 9/5/2014 at 27, ("I said it's aggravated. It's aggravated for all the reasons I have given.") Yet, the court sentenced Appellant to five to ten years' incarceration for conspiracy to commit aggravated assault, which falls outside of the aggravated range. The court never stated that it was sentencing Appellant outside of the aggravated range nor did it provide a contemporaneous reason for such a deviation.

For these reasons, we vacate Appellant's judgment of sentence in part and remand for resentencing as to conspiracy to commit aggravated assault. We affirm the judgment of sentence in all other respects.

Judgment of sentence affirmed in part and vacated in part. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 5/16/2016