J-S29035-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNYSLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ORGUNA DANIEL SANDERS | : | |
| | : | |
| Appellant | : | No. 708 WDA 2023 |

Appeal from the Judgment of Sentence Entered January 24, 2023
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001206-2021

BEFORE:  DUBOW, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                **FILED: September 10, 2024**

Appellant, Orguna Daniel Sanders, appeals from the aggregate judgment of sentence of 20 to 40 years' incarceration, imposed after he was convicted by a jury of attempted homicide, aggravated assault, possession of a firearm by a person prohibited, and related offenses.  On appeal, Appellant argues that the jury's verdict was contrary to the weight of the evidence, and that his sentence is manifestly excessive.  After careful review, we affirm.

We summarize the following facts based on Appellant's statement of the case.  **See** Appellant's Brief at 5-14.[1]  Cora Harper testified that on March 18, 2021, at approximately 6:40 p.m., she was in her house when she witnessed Jonathan McClendon arguing outside with someone.  **Id.** at 5.  She saw that person get into a white van with blue stripes, move it a short distance away,

_____

[1] We cite Appellant's brief, and omit his citations to the trial testimony.

and then shoot McClendon. *Id.* Harper described the shooter as "black, short, [and] heavyset, [with] light skin, [and] … between [the] age[s of] 30 and 35…." *Id.* She also said that the shooter "was wearing a red hoodie and black jeans…." *Id.* Harper called 911 and gave a description of the shooter to police. *Id.* Police arrived and transported McClendon to the hospital. He survived the shooting, but passed away "months later as the result of an overdose." *Id.* at 6.

A van matching the one driven by the shooter was found shortly after the shooting and determined to be registered to Appellant. *Id.* at 7. Although the van was empty, police officers found Appellant hiding in another parked vehicle nearby. *Id.* at 7, 8. He was wearing a red hoodie and black jeans. *Id.* at 8. A later search of the vehicle where Appellant had been hiding revealed a bag that contained various items, including a black Ruger handgun. *Id.* at 11. Subsequent DNA testing showed that Appellant's DNA was on that weapon, along with DNA from four other, unidentified individuals. Additionally, at the scene of the shooting, police recovered several fired cartridge cases, which were later tested and determined to have been fired from the Ruger handgun. *Id.* at 12. Gunshot residue was also found on Appellant's person and in his vehicle, the white van with blue stripes. *Id.*

Surveillance footage was admitted from Gannon University, which is nearby the scene of the shooting, showing Appellant's "exiting from the front driver's seat of the [white van] and confronting [] McClendon. A passenger also exited the van as [] McClendon was being fired at, but no one knew who

that person was.  Also[,] an individual wearing red was [seen] walking towards the [scene of the shooting] and then out of the view of the camera."  *Id.* at 13.

Finally, Sarah Torres, Appellant's stepdaughter, testified that she was in a relationship with McClendon at the time of the shooting.  On the day he was shot, she "heard some commotion" just after McClendon left their house.  *Id.* at 8.  Looking outside, "[s]he saw [McClendon] arguing with [Appellant], her stepdad…."  *Id.* at 8-9.  Torres testified that she saw Appellant get into his white van, and then she "saw him shoot … McClendon…."  *Id.* at 9.  Torres also provided a statement to police after the shooting, in which "she identified [Appellant] as the shooter, including saying that he stated, 'I'm going to shoot you[.'"]  *Id.*  Although Torres claimed that "she did not remember everything with a clear mind … when she gave the statement[,]" and claimed "[s]he was locked in a room at the police station[,]" and was not provided any information about McClendon's condition until she gave a statement, "[t]he officer who interviewed [her] stated that she was 'extremely cooperative' when giving her interview."  *Id.* at 10.

Based on this and other evidence, the jury convicted Appellant of the above-stated offenses.  He was sentenced on January 24, 2023, to the aggregate term set forth *supra*.[2]  Accordingly, Appellant had until February 3,

_____

[2] On January 25, 2023, Appellant filed a *pro se* notice of appeal, which the trial court merely forwarded to Appellant's counsel, Tina Fryling, Esq. On
*(Footnote Continued Next Page)*

2023, to file a timely post-sentence motion or February 27, 2023, to file a timely notice of appeal. *See* Pa.R.A.P. 720(A)(3) (explaining that a defendant's notice of appeal shall be filed within 30 days of imposition of sentence); *see* Pa.R.Crim.P. 720(A)(1) (stating that "a written post-sentence motion shall be filed no later than 10 days after imposition of sentence"); *see also Commonwealth v. Green*, 862 A.2d 613, 618 (Pa. Super. 2004) (*en banc*) ("The time for filing an appeal can be extended beyond [thirty] days after the imposition of sentence only if the defendant file[d] a timely post-sentence motion.").

It is well-settled that if counsel fails to file a timely post-sentence motion, the appeal period can only be tolled "if the trial court accept[s a post-sentence motion] under its limited authority to allow the filing of a post-

---

October 23, 2023, this Court issued an order directing the trial court to docket Appellant's January 25, 2023 *pro se* notice of appeal and transmit the filed notice of appeal to this Court for docketing, citing Superior Court I.O.P. 65.24 (Hybrid Representation) (providing that *pro se* filings by litigant represented by counsel shall not be accepted for filing, except: "A *pro se* notice of appeal received from the trial court shall be docketed, even in instances where the *pro se* was represented by counsel in the trial court."). **See also** Pa.R.A.P. 121(g) (where a party is represented by counsel, a party may file a *pro se* notice of appeal); *see also* Pa.R.A.P. 905(b) (providing that the clerk shall immediately transmit a copy of the notice of appeal to the appellate court prothonotary after stamping it with the date of receipt and docketing it pursuant to subsection (a)(3) of the rule). The trial court complied with this Court's October 23rd order and Appellant's *pro se* January 25, 2023 notice of appeal was docketed at 1300 WDA 2023. On February 16, 2024, this Court issued a *per curiam* order dismissing that appeal as duplicative of the instant appeal.

sentence motion *nunc pro tunc*." ***Commonwealth v. Capaldi***, 112 A.3d 1242, 1244 (Pa. Super. 2015). "[A] post-sentence motion *nunc pro tunc* may toll the appeal period, but only if two conditions are met." ***Commonwealth v. Dreves***, 839 A.2d 1122, 1128 (Pa. Super. 2003) (*en banc*). "First, within 30 days of imposition of sentence, a defendant must request the trial court to consider a post-sentence motion *nunc pro tunc*." ***Capaldi***, 112 A.3d at 1244. "Second, the trial court must expressly permit the filing of a post-sentence motion *nunc pro tunc*, also within 30 days of the imposition of sentence." ***Id.*** (emphasis omitted).

Here, on Monday, February 6, 2023, 13 days after sentencing, Appellant's counsel, Attorney Fryling, filed a "Motion for Transcription," stating that the trial court appointed her as counsel and ordered that a post-sentence motion and/or appeal be filed on Appellant's behalf. Also, on February 6, 2023, Attorney Fryling filed an "Application for Extension of Time Within Which to File Post Sentence Motion, *Nunc Pro Tunc*," wherein she requested an extension of time to file a post-sentence motion. Attorney Fryling requested an extension of 20 days after the transcripts were filed with the clerk of courts and counsel was provided written notification that the transcripts were filed. On February 7, 2023, 14 days after sentencing, the trial court granted the requested extension of time to file Appellant's post-sentence motion until twenty days after the transcripts were filed with the clerk of courts and counsel received written notification of the filing. According to the trial court docket, the transcripts were filed on various dates from February 28, 2023, to May 2,

2023. There is no indication on the trial court docket as to the date on which written notification of the filed transcripts was sent to counsel.

On May 18, 2023, Attorney Fryling filed a "Motion for Post-Sentence Relief" on behalf of Appellant. Therein, Attorney Fryling argued that the jury's verdict was against the weight of the evidence and that Appellant's sentence was manifestly excessive. On June 12, 2023, the trial court issued an "Order and Opinion," denying Appellant's post-sentence motion. On June 21, 2023, Attorney Fryling filed a notice of appeal, which we conclude is timely. Within 30 days of Appellant's sentencing, Attorney Fryling sought, and the trial court expressly granted, the right to file a *nunc pro tunc* post-sentence motion. Counsel filed a post-sentence motion within the extension allotted by the court, thus tolling the time for filing an appeal until 30 days after the trial court ruled on Appellant's post-sentence motion, which occurred on June 12, 2023. Thus, Appellant's June 21, 2023 notice of appeal is timely.

Appellant and the court both complied with Pa.R.A.P. 1925(b).[3] Herein, he states two issues for our review:

_____

[3] We note, however, that the court's June 22, 2023 Rule 1925(b) order directed that Appellant's concise statement be filed within 21 days, or by July 13, 2023, yet Appellant's statement was not filed until July 20, 2023. There is no indication in the record that Appellant requested, or was granted, an extension of time to file his concise statement. Nevertheless, we need not remand under Rule 1925(c)(3). **See** Pa.R.A.P. 1925(c)(3) ("If an appellant represented by counsel in a criminal case was ordered to file and serve a Statement and either failed to do so, or untimely filed or served a Statement, such that the appellate court is convinced that counsel has been *per se*
*(Footnote Continued Next Page)*

[I.] The jury's verdict was against the weight of the evidence in this case in that the evidence did not support that [Appellant] was the individual who shot the victim - specifically, none of the witnesses identified [Appellant] as the shooter[;] [] Torres stated at trial that she only gave a statement to the police because she wanted to see her boyfriend[,] who was the individual who was shot and who was in the hospital[,] and [she] was told she could not if she did not testify[;] another individual was seen running from the scene of the shooting and hiding behind houses[;] an individual was on video getting out of a van near the scene[; and] no forensic evidence linked [Appellant] to the crime.

[II.] The sentence imposed in this case was manifestly excessive and clearly unreasonable based on the nature of the conviction and [Appellant's] criminal history, and that the prior record score used for his sentencing was incorrect.

Appellant's Brief at 3.

Appellant first contends that the jury's verdict was contrary to the weight of the evidence. He argues:

The only person that told police that she saw [Appellant] shoot [] McClelland was [Torres,] [] McClelland's girlfriend, who also happened to be [Appellant's] wife's daughter and who admitted the two were having marital issues in the days preceding the trial. She testified inconsistently at the time of the trial in terms of any positive identification of [Appellant] as the shooter. Further, she stated that the police would not let her see the victim[,] her boyfriend, until she told them who the shooter was, and that they would not even tell her what his condition was. [] McClendon

_____

ineffective, and the trial court did not file an opinion, the appellate court may remand for appointment of new counsel, the filing or service of a Statement *nunc pro tunc*, and the preparation and filing of an opinion by the judge."). The trial court sufficiently addressed Appellant's issues in its opinion and order denying his post-sentence motion, which it adopted and referred to in its Rule 1925(a) opinion. ***See Commonwealth v. Burton***, 973 A.2d 428, 433 (Pa. Super. 2009) (holding that where an appellant files an untimely Rule 1925(b) statement, "this Court may decide the appeal on the merits if the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal"). Accordingly, remand is unnecessary.

himself did not identify the shooter despite being alive when officers first reached him and being asked who shot him. Further, the police did not investigate any further individuals as potentially being the shooter(s), including a [sighted] group of four men or an individual who was in a black SUV near the site of the shooting. An individual got out of the vehicle from where the shooting took place, but the officers never investigated that person further. An individual named Roshe Williams was at the scene of the crime but was not investigated, even though he also was wearing a red shirt. The cell phone of [] McClendon was taken from the scene but never searched for information.

The forensic evidence in this case linked [Appellant] to a firearm[,] but that does not mean he was the shooter. In fact, other individuals' DNA was found on various items at the crime scene, including the gun. [Appellant] was unarmed when he exited the Mercury Mountaineer.

All of this evidence, taken together, shows that the evidence against [Appellant] did not add up to enough weight to prove that [Appellant] was the shooter.

*Id.* at 17-19.

In assessing Appellant's argument, we begin by explaining that, unlike in a sufficiency of the evidence claim, "[a] motion for a new trial on grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence." ***Commonwealth v. Lyons***, 568 A.2d 1266, 1269 (Pa. Super. 1989) (citation omitted). We went on in *Lyons* to explain that:

Whether a new trial should be granted on grounds that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial judge, and his decision will not be reversed on appeal unless there has been an abuse of discretion…. The test is not whether the court would have decided the case in the same way but whether the verdict is so contrary to the evidence as to

- 8 -

make the award of a new trial imperative so that right may be given another opportunity to prevail.

*Id.* (citations omitted). Furthermore, "[f]or a new trial to lie on a challenge that the verdict is against the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Commonwealth v. Shaffer***, 722 A.2d 195, 200 (Pa. Super. 1998).

Here, Appellant has failed to demonstrate that a new trial is warranted. As the trial court observed,

the evidence against [Appellant] was strong, and included:

(1) Witness Sarah Torres identified [Appellant] as the shooter, both at trial and during a previous[ly] recorded statement.

(2) Witness Cara Harper described the shooter, which description matched [Appellant] (including his clothing).

(3) Video surveillance of [Appellant's] vehicle leaving the scene.

(4) Gunshot residue in [Appellant's] vehicle and on his clothing.

(5) [Appellant] was found hiding in a vehicle with the gun used in the crime.

(6) [Appellant's] DNA was on the gun that fired the shots.

For the above reasons, the jury's verdict was not against the weight of the evidence and did not shock the [c]ourt's sense of justice.

Trial Court Opinion and Order, 6/12/23, at 1-2.

We discern no abuse of discretion in the court's decision. While Appellant attacks the credibility of Torres's testimony, her claim that he was the shooter was bolstered by Harper's description of the shooter that matched Appellant, and video surveillance showing Appellant at the scene. Moreover, there was strong physical evidence, including that the gun found in the vehicle

where Appellant was hiding was determined to be the weapon used in the shooting, Appellant's DNA was on that firearm, and he had gunshot residue on his clothing and in his van. We agree with the court that, given the totality of the evidence against Appellant, the jury's verdict is not shocking. Therefore, no relief is due on Appellant's first issue.

Second, Appellant challenges the discretionary aspects of his sentence.

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. **Commonwealth v. Sierra**, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

We conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

**Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, … 909 A.2d 303 ([Pa.] 2006). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. **Commonwealth v. Mann**, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, … 831 A.2d 599 ([Pa.] 2003).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. **Commonwealth v. Paul**, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Sierra**, **supra** at 912–13.

***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (quoting ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010)).

Here, Appellant filed a timely notice of appeal and preserved the sentencing claims, set forth in his Statement of the Questions Presented, in his post-sentence motion. He has also included a Rule 2119(f) statement in his appellate brief. However, in that statement, Appellant presents a wholly new issue, claiming that "the fact that the facts of his case do not support the ultimate decision by the jury should have netted a lower sentence for him." Appellant's Brief at 17. Not only did Appellant fail to preserve this claim in his post-sentence motion or Rule 1925(b) statement, but this single sentence also does not constitute a developed discussion of how Appellant's sentence is inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. Appellant has therefore not demonstrated a substantial question for our review.

In any event, even if Appellant had set forth a substantial question, we would conclude that his undeveloped argument is meritless. Appellant's entire argument in support of his sentencing challenge is as follows:

> [Appellant] was sentenced to 20 - 40 years at Count 1, and all of the remaining charges either ran concurrent with Count 1 or merged with other counts. The sentences were in the standard range. At the time of sentencing, [Appellant] stated that he was "set up" and didn't commit the crime. His defense attorney requested that certain counts be merged for purposes of sentencing and that other counts run concurrently, which the trial court agreed with.

*Id.* at 19-20. Appellant's argument bolsters, rather than challenges, the court's sentencing decision. Thus, he has obviously failed to demonstrate that the trial court abused its discretion in fashioning his sentence. *See Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006) (stating that "[s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment"). In other words, Appellant has not "establish[ed], by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Id.* Therefore, even if Appellant stated a substantial question, we would not grant any sentencing relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

9/10/2024

- 12 -