J-S40003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JENNIFER ANNE MEDZIE, | |
| Appellant | No. 694 WDA 2018 |

Appeal from the Judgment of Sentence Entered November 6, 2017
In the Court of Common Pleas of Clearfield County
Criminal Division at No(s):  CP-17-CR-0000771-2016

BEFORE:  BENDER, P.J.E., MCLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:             **FILED OCTOBER 09, 2019**

Appellant, Jennifer Anne Medzie, appeals from the judgment of sentence of 20 to 40 years' incarceration, imposed after a jury convicted her of third-degree murder and related offenses.  Appellant challenges the discretionary aspects of her sentence, as well as the sufficiency of the evidence to sustain her convictions.  We affirm.

The trial court summarized the pertinent facts of this case, as follows:

> The case at bar involved the death of [a] two-year-old [female] (hereinafter, "Victim") on November 18, 2013. Immediately prior to Victim's untimely death, she was under the care and supervision of … [Appellant].  [Appellant] met Victim's biological father, Cody Lauder (hereinafter, "Lauder"), in July of 2013.  [Appellant] moved in with Lauder in September of the same year.  Because of Lauder's work schedule, [Appellant] became the primary caretaker of Victim during the day. In the 4 (four) to 6 (six) weeks prior to her death, Victim began losing her hair, and

---

[*] Retired Senior Judge assigned to the Superior Court.

developed dark circles … under her eyes.  On November 14, 2013, Victim began to vomit.  Lauder and [Appellant] then took Victim to the Dubois Hospital Emergency Room, where she was released thereafter with flu-like symptoms.

On November 15, 2013, Lauder checked on … Victim before leaving for work.  Lauder report[ed] that Victim was asleep and well in her pack n' play.  [Appellant] report[ed] that she went to get Victim out of the pack n' play at approximately 7:30 a.m., at which time Victim "appeared to be normal and showed no signs of being sick."  [Appellant] stated that as she was dressing her, Victim went limp and "fainted in her arms."  She thereafter called paternal grandmother Brandi Lauder and [Appellant's] friend, Krisandra Evans (hereinafter, "Evans").  She report[ed] attempting to call 911 and not being able to get through.  At this point, Evans called 911, [and emergency personnel] arrived at approximately 9 a.m.  Approximately one hour and 15 minutes elapsed between the inception of Victim's symptoms and calling 911.

At no point in time did [Appellant] admit to knowing what was wrong with … Victim.  … Victim was ultimately life-flighted from Clearfield Hospital to Pittsburgh Children's Hospital; she was pronounced brain dead on November 18, 2013. Medical personnel attempted to gather information from [Appellant] and Lauder.  As noted, [Appellant] never gave any information or admitted to knowing what was wrong with Victim.  Uncontested testimony from three medical experts revealed that [Victim] died from global hypoxic[]ischemic encephalopathy resulting from blunt force trauma to the head, or, "Shaken Baby Syndrome."

Trial Court Opinion (TCO), 11/30/18, at 1-2 (footnotes omitted).

Following a jury trial, Appellant was convicted of third-degree murder, aggravated assault, endangering the welfare of children (EWOC), simple assault, and recklessly endangering another person (REAP).  On November 6, 2017, she was sentenced to 20 to 40 years' imprisonment for her third-degree murder conviction, and a concurrent term of 1 to 2 years' incarceration for her

EWOC offense. Appellant's remaining convictions merged for sentencing purposes.

Appellant filed a timely post-sentence motion, which the court denied. She then filed a timely notice of appeal, and she also complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed its Rule 1925(a) opinion on November 30, 2018. Herein, Appellant states two issues for our review:

> I. Whether the sentence imposed, which was the statutory maximum, was excessive and focused too much on the punitive nature of the sentence and did not place enough emphasis on rehabilitation[,] especially in light of [] Appellannt's [*sic*] young age?
>
> II. Whether the evidence was sufficient enough to prove [] Appellant committed murder of the third degree, aggravated assault, [EWOC], simple assault and [REAP,] as the nexus connecting the death of the child to [] Appellant was weak at best; as the evidence showed the child was sick for at least six weeks prior to her death, and [she] went to the emergency room the day before her death and was released and sent home?

Appellant's Brief at 5 (unnecessary capitalization omitted).

Appellant's first issue implicates the discretionary aspects of her sentence.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. ***Commonwealth v. Sierra***, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > We conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether [the]

- 3 -

appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. *Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra, supra* at 912–13.

*Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (quoting

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010)).

In this case, Appellant filed a timely notice of appeal, and she included a Rule 2119(f) statement in her appellate brief. Therein, she alleges the following:

The sentencing [court] did not state [its] reasons on the record for the sentence[] imposed and the … [court] gave an unreasonable sentence under the circumstances, although the sentence was within the guidelines.

The sentencing court must state its reasons on the record for the sentence imposed. The sentencing court did not state its reasons for the sentence on the record and relied solely on the recommendation from the probation office. Although within the guidelines, because the guidelines go up to the statutory maximum for [t]hird[-d]egree [m]urder, the maximum sentence was unreasonable even though [it is] within the guidelines. The sentencing court stated that it had to "balance" the death of a two

year old versus the request for leniency from [] Appellant. ([N.T.] Sentencing[, 11/6/17, at] 25). There was no "balancing" as the court went completely one way without stating its reasons for doing so on the record as required and the court ignored sentencing factors other than punishment.

Appellant's Brief at 9.

Initially, Appellant did not assert, in her post-sentence motion or at the sentencing proceeding, that the court failed to state its reasons for her sentence on the record, or that it relied solely on the recommendation of the probation department. **See** Post-Sentence Motion, 11/16/17, at 2. Instead, Appellant argued only that the court failed to "adequately consider" Appellant's "age and family history[,]" her rehabilitative needs, and the protection of the public. **Id.** Thus, Appellant waived the arguments she now raises on appeal. **See Commonwealth v. Bullock**, 948 A.2d 818 (Pa. Super. 2008) (stating that a discretionary aspect of sentence claim is waived if the appellant does not challenge it in post-sentence motions or by raising the claim during the sentencing proceedings).[1]

_____

[1] Additionally, we observe that Appellant did not raise, in her Rule 1925(b) statement, her assertions that the court failed to state adequate reasons for her sentence, and that it relied solely on the probation department's sentencing recommendation. However, our review of the record reveals that the trial court did not inform Appellant, in its Rule 1925(b) order, that any issue(s) not raised would be deemed waived. **See** Order, 5/14/18, at 1 (single page); **see also** Pa.R.A.P. 1925(b)(3)(iv) (directing that the Rule 1925(b) order state "that any issue not properly included in the Statement … shall be deemed waived"). Therefore, we would not deem Appellant's issues waived based on her omitting them from her Rule 1925(b) statement. **See Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.**, 88 A.3d 222, 225 (Pa. Super. 2014) ("In determining whether an appellant has waived his issues on appeal based on non-compliance with [Rule] 1925, it is the trial court's

Additionally, Appellant's bald claim that her sentence is unreasonable, and her assertion that the court ignored sentencing factors, do not constitute substantial questions for our review. Appellant does not identify in what way(s) her sentence is unreasonable, nor what factors the court failed to consider. She also does not explain, or cite any legal authority to support, why the sentencing judge's actions were inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. Thus, Appellant has failed to demonstrate a substantial sentencing question for our review.[2]

_____

order that triggers an appellant's obligation[;] … therefore, we look first to the language of that order.") (citation and internal quotation marks omitted).

[2] In any event, we would deem Appellant's sentencing assertions meritless, as it is clear from the record that the court did not focus solely on punishing her without considering other factors, such as her age and need for rehabilitation. Initially, the court had the benefit of a pre-sentence report. N.T. Sentencing at 15. It also stated that it had considered a sentencing memorandum prepared by defense counsel, as well as numerous letters written by friends and family of Appellant that were attached thereto. *Id.* at 10-13. Additionally, the court heard statements at the sentencing hearing from Appellant's aunt and father, who stressed Appellant's young age at the time of her crimes. *Id.* at 17, 23. Appellant's pastor also spoke, claiming that she had been counseling Appellant, and asking the court for a lenient sentence. *Id.* at 18-19. Ultimately, however, the court found that Appellant had made the choice to move in with Victim's father and care for Victim every day, although Appellant was only 18 years old at the time. *Id.* at 24. The court also stressed that while the individuals who wrote or spoke on Appellant's behalf believed "that she was innocent and that somebody else should be held responsible[,]" that was "not what the evidence showed." *Id.* at 25. Instead, "the evidence that was presented to the jury was very clear that on that fateful morning, for whatever reason, … [Appellant] shook and beat that two-year-old girl to death." *Id.* After carefully balancing the

In Appellant's second issue, she challenges the sufficiency of the evidence to sustain her convictions. To begin, we note our standard of review for a challenge to the sufficiency of the evidence:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. *Commonwealth v. Moreno*, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. *Commonwealth v. Hartzell*, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. *Moreno, supra* at 136.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011).

Here, Appellant contends that the evidence was insufficient to sustain her convictions because the Commonwealth failed to prove that she "caused an injury to [Victim] which resulted in her death." Appellant's Brief at 14. Appellant stresses that "on the initial death certificate[, the medical examiner, Abduurezak Shakir, M.D.,] stated that the manner of death … 'cannot be determined.'" *Id.* at 13 (citing N.T. Trial, 8/22/17, at 36). Dr. Shakir "also testified that the blunt force trauma on the child's body and contusions to the child's body could have been caused after her death when [her] organs were

---

seriousness of Appellant's offense against the mitigating circumstances of her case, the court determined that the statutory maximum term of incarceration (which, for third-degree murder, is also a standard range sentence) was appropriate. In sum, even had Appellant preserved her sentencing claim for our review, we would conclude that she has not demonstrated an abuse of discretion in the court's sentencing decision.

harvested[,]" or "during the medical treatment of the child." *Id.* at 14 (citing

N.T. Trial, 8/22/17, at 39). Appellant insists that

> [t]he Commonwealth wants to stretch all this into a finding that … Appellant caused these injuries to the child[] when[,] in fact[,] there is no direct evidence thereto[,] and even the medical evidence presented indicates that trauma caused to the child could have been caused by the medical personnel working on the child. Further, no blood testing, x-rays, or any other tests were performed on the child the very day before she died when she was at the emergency room.

*Id.* Therefore, Appellant argues that the evidence was insufficient to

demonstrate that she caused the injuries to Victim that resulted in Victim's

death.

We disagree. Dr. Shakir opined that Victim's cause of death was "global

hypoxic ischemic encephalopathy resulting from blunt force trauma of the

head." N.T. Trial, 8/22/17, at 36. The doctor explained that he listed the

manner of death on Victim's death certificate as "could not be determined"

because it was unclear, at that time, "whether this [was] a homicide or

whether … [it was] accidental." *Id.* Additionally,

> [Dr.] Shakir further testified that [Appellant's] description of events immediately preceding Victim's symptoms was not consistent with the autopsy findings. [Dr.] Shakir stated that based on the autopsy and examination, [Appellant's] description of events indicated [Appellant] was not describing "exactly what happened."

TCO at 7.

Furthermore, Dr. Shakir was not the sole medical expert presented by

the Commonwealth. Instead,

[Dr.] Shakir's findings regarding cause of death were corroborated by two different medical experts. Adelaide Eichman (hereinafter, "[Dr.] Eichman") at the time of trial worked as a pediatrician at Children's Hospital of Pittsburgh in the Child Advocacy Center. Specifically, [Dr.] Eichman conducted evaluations for children to determine if there has been abuse and/or neglect. [Dr.] Eichman performed a consultation and examination of Victim on November 15, 2013. Based on medical history, her examination of Victim and interviews with Victim's family and [Appellant], [Dr.] Eichman concluded that Victim suffered from Abusive Head Trauma (Shaken Baby Syndrome). [Dr.] Eichman stated that "... this Child was in the intensive care unit because she had been abused ... somebody taking care of her had hurt her and basically put her in critical condition."

Pathologist Harry Kamerow (hereinafter, "[Dr.] Kamerow")[,] of Centre Pathology Associates[,] testified that Victim died of global hypoxic ischemia encephalopathy due to blunt force trauma to the head. [Dr.] Kamerow further testified that the manner of death was homicide. [Dr.] Kamerow stated that, "this clinical history overwhelmingly indicates homicide." Additionally, [Dr.] Kamerow testified that the individual present with Victim would know that something was wrong immediately. She would have been "symptomatic in terms of intense head pain within multiple minutes ... greater than one and less than ten."

*Id.* at 7-8 (footnotes omitted).

The testimony of these medical experts was sufficient for the jury to conclude that Victim died of blunt force trauma to her head, and that her injuries were caused intentionally, not accidentally. Additionally, Appellant "admitted that she was the only one present with Victim. Lauder had left for work, leaving [Appellant] and Victim alone on the morning of November 15, 2013." TCO at 8. Therefore, the Commonwealth's circumstantial evidence was adequate to establish that Appellant caused the injuries to Victim that resulted in her death. Consequently, her challenge to the sufficiency of the evidence to support her convictions is meritless.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/9/2019