J-S49014-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DENNIS EDWARD FRYE, | |
| Appellant | No. 1965 EDA 2018 |

Appeal from the Judgment of Sentence Entered November 20, 2017
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0003007-2017

BEFORE: BENDER, P.J.E., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED DECEMBER 05, 2019**

Appellant, Dennis Edward Frye, appeals from the judgment of sentence of 7½ to 20 years' incarceration, imposed after he pled guilty to solicitation to commit statutory sexual assault, unlawful contact with a minor, criminal use of a communication facility, and indecent assault of a person less than 16 years of age. Appellant solely challenges the discretionary aspects of his sentence. We affirm.

The trial court set forth the facts of Appellant's case, as summarized by the Commonwealth at his guilty plea proceeding, as follows:

On January 25, 2017, Officer Andrew Herman of the Middletown Township Police Department was dispatched to 18 Cameo Road in Middletown Township, Bucks County for the report of a domestic disturbance.

---

[*] Former Justice specially assigned to the Superior Court.

Dawn Ross relayed that her then 51-year old step[-]brother, [Appellant], date of birth 11/25/1965, had been inappropriately touching her 14-year old daughter, N.R., date of birth 11/12/2002, while he was living with them.

Dawn advised that [Appellant] had been living with them for a long period of time. Dawn's husband, Barry Ross, had been sent to a state correctional facility for 21[½] to 47 years for raping their daughter, N.R., almost daily from the ages of six to 12 years old.

After this occurred, [Appellant] volunteered to move in and help Dawn out with her five children. N.R. made Dawn aware that [Appellant] had been acting inappropriately towards her via text messages, sexual conversations and touching her private areas.

\*\*\*

N.R. advised that [Appellant] frequently talked to her inappropriately, stating that he was in love with her and he wants to run away with her, and that he wants to marry her.

He often asked her about the details of her abuse at the hands of her father and would get jealous or angry if she said that she missed him. N.R. further stated that [Appellant] had touched her on her breasts, upper thighs near her vagina and on her buttocks several times. This would occur almost every day [after] [Appellant] moved in to her home in Bucks County.

[Appellant] frequently bought N.R. gifts, including a cell phone. Since at least October of 2016, [Appellant] had been texting her cell phone from his phone with phone number (215) 436-2966. [Appellant] told N.R. to erase these messages so nobody could see them.

The following are some of the many inappropriate messages he would send to N.R.:

When are you going to kiss me?
Why do you make me crazy?
My deductible is $250. The only way you're getting this phone is to become my baby.
I know who's not banging up there. Us.
I'm still in love with you.
Soon you'll get a boy and I'll be history.

> I'll be home later and you better behave or you're going to get a spanking.
> Will you be my baby?
> Mmm, this cookie is almost as delicious as you. I mean your sweet chocolate ass.
> I don't like sharing your love with anyone else.
> I can't live without you.
> Marry me.
> I might terrorize your ass later. LOL.
> Come lay with me.
> I got your pussy rubbing all over me.
> I can't just turn off my feelings for you.
> Wait until you hear my dream about you and me. It was freaky.

During this period of abuse, N.R. began cutting her body. In response to that, [Appellant] would be texting her things such as:

> Now I'm going to have to check your whole body. LOL. Some teens get random drug tested.
> You're going to get random strip searched.

[Appellant] would also call N.R. names such as, ["]Bitch["] and ["]Skank["] via text.

N.R. described a time when [Appellant] came into her room and told her that he had a dream about her being aggressive with him and having sex with him in the shower. N.R. detailed how [Appellant] would say and text her uncomfortable things and then come into her room and rub her buttocks or breasts.

When she would push him away or say no, he would get angry and threaten to turn off her phone. [Appellant] has repeatedly told N.R. that he wants to have sex with her. She has repeatedly told him no.

Dawn Ross confronted [Appellant] and he admitted to attempting to show N.R. what good touch/bad touch was. On February 9, 2017, Affiants Torrente and Strother met with [Appellant]. During this meeting, Detective Torrente called the telephone number from which N.R. was receiving the text messages. When she did so, the cellular telephone located in [Appellant's] right front pant[] pocket rang. [Appellant] advised that this was the phone he was using to communicate with N.R.

> Detective Strother looked at the phone and noticed that [Appellant] had deleted all of the text messages between himself and N.R. A forensic download of that phone recovered those deleted messages.
>
> [Appellant] admitted in the later interview he was sexually attracted to N.R., and that he sent her those sexual messages.

Trial Court Opinion (TCO), 3/29/19, at 2-4.

Appellant pled guilty to the above-stated offenses on November 20, 2017. That same day, he was sentenced to aggravated-range terms of incarceration of 33 to 96 months for both his solicitation and unlawful contact convictions. He also received an aggravated-range sentence of 18 to 36 months' incarceration for his conviction of criminal use of a communication facility. For his indecent assault offense, Appellant was sentenced to a mitigated-range term of 6 to 12 months' incarceration. These sentences were imposed to run consecutively, resulting in an aggregate term of 7½ to 20 years' imprisonment.

Appellant filed a timely post-sentence motion for reconsideration of his sentence, which was ultimately denied following a hearing. He then filed a timely notice of appeal, and he complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement. The trial court filed its Rule 1925(a) opinion on March 29, 2019. Herein, Appellant states one issue for our review: "Did the lower court err in imposing a sentence of total confinement of not less than 7½ to not more than 20 years?" Appellant's Brief at 4.

> Appellant's issue implicates the discretionary aspects of his sentence.
>
> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. ***Commonwealth v.***

*Sierra*, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> We conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).
>
> *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. *Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa. Super. 2003), *appeal denied*, 574 Pa. 759, 831 A.2d 599 (2003).
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra, supra* at 912–13.

*Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (quoting

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010)).

Appellant has satisfied the first three prongs of the test to obtain review of his discretionary-aspects-of-sentence claim.  In his Rule 2119(f) statement, Appellant contends that he has presented a substantial question for our review because his sentence is manifestly excessive based on the criminal conduct that occurred, the court failed to take into account his rehabilitative needs, and the court abused its discretion by imposing consecutive sentences,

resulting in an unreasonable aggregate term of incarceration. *See* Appellant's Brief at 10-12. We conclude that Appellant has raised substantial questions for our review. *See Commonwealth v. Swope*, 123 A.3d 333, 340 (Pa. Super. 2015) (concluding that Swope set forth a substantial question by contending that his consecutive sentences were unduly excessive because the court failed to consider his rehabilitative needs and other mitigating factors).

Our standard of review of the merits of a challenge to the discretionary aspects of a sentence is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> When imposing a sentence, the sentencing court must consider the factors set out in 42 [Pa.C.S.] § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant…. Furthermore, [a] trial court judge has wide discretion in sentencing and can, on the appropriate record and for the appropriate reasons, consider any legal factor in imposing a sentence in the aggravated range. The sentencing court, however, must also consider the sentencing guidelines.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006) (internal citations and quotation marks omitted).

In this case, we have reviewed the arguments presented by Appellant, the Commonwealth's response, the certified record, and the applicable case law. We have also considered the well-reasoned decision of the Honorable

Raymond F. McHugh of the Court of Common Pleas of Bucks County. We conclude that Judge McHugh thoroughly addresses the arguments presented by Appellant, and he correctly deems them meritless. **See** TCO at 6-12. Therefore, we adopt that portion of Judge McHugh's decision as our own,[1] and affirm Appellant's judgment of sentence for the reasons set forth therein.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/5/19

---

[1] We note that Judge McHugh addresses a claim involving the merger of Appellant's sentences for solicitation and unlawful contact, which Appellant has abandoned on appeal. **See** TCO at 5-6. Thus, we do not adopt, or express any opinion on, that portion of Judge McHugh's analysis.

*See attached
list.*
3-29-19

# IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | |
| | : | CP-09-CR-0003007-2017 |
| v. | : | |
| | : | |
| DENNIS EDWARD FRYE, JR. | : | |

## OPINION.

Dennis Edward Frye, Jr. (hereinafter "Appellant") appeals to the Superior Court of Pennsylvania from the denial of post-sentence motions on February 2, 2018. We file this Opinion pursuant to Pennsylvania Rules of Appellate Procedure Rule 1925(a).

### I. PROCEDURAL HISTORY

Appellant pled guilty to the following crimes: Criminal Solicitation to Statutory Sexual Assault, Unlawful Contact with Minor-Sexual Offenses, Criminal Use of Communication Facility, and Indecent Assault of a Person Less than 16 Years of Age. The Commonwealth was granted leave to *nolle prosse* the remaining charges.[1] At the guilty plea and sentencing hearing on November 20, 2017, Appellant was sentenced as follows:

| Crime | Guidelines | Sentence |
|---|---|---|
| Solicitation to Statutory Sexual Assault | 18-24 months +/- 9 months | 33-96 months |
| Unlawful Contact with Minor-Sexual Offense | 18-24 months +/- 9 months | 33-96 months |
| Criminal Use Communications Facility | 6-16 months +/- 3 months | 18-36 months |
| Indecent Assault-Person Less 16 Years of Age | 18-24 months +/- 9 months | 6-12 months |

[1] The Criminal Information contained the following counts:

Count 1: Statutory Sexual Assault – 11 Years Older – Criminal Solicitation: 18 Pa. C.S.A. § 902(a)
Count 2: Unlawful Contact with Minor – Sexual Offense: 18 Pa. C.S.A. § 6318(a)(1)
Count 3: Indecent Assault on Person Less than 13 Years of Age: 18 Pa. C.S.A. § 3126(a)(7)
Count 4: Criminal Use of Communication Facility: 18 Pa. C.S.A. § 7512(a)
Count 5: Unlawful Contact with Minor – Sexual Offense: 18 Pa. C.S.A. § 6318(a)(1)
Count 6: Corruption of Minors – Defendant Age 18 or Above: 18 Pa. C.S.A. § 6301(a)(1)(ii)
Count 7: Indecent Assault Person Less 16 Years Age: 18 Pa. C.S.A. § 3126(a)(8)

1

All sentences were ordered to run consecutively, resulting in an aggregate sentence of not less than seven and one half (7 ½) nor more than twenty (20) years. Appellant was given credit for time served from his date of incarceration in this case. As a condition of parole, Appellant was ordered to have no contact with the victim or any unsupervised contact with a person under the age of eighteen (18) years. Appellant was also ordered to attend and successfully complete a sexual offender program administered by the Pennsylvania Department of Corrections prior to parole.

Appellant filed timely post sentence motions, which were denied after a hearing on February 2, 2018.[2] Appellant now appeals to the Superior Court.

## II. FACTUAL BACKGROUND

The facts of this case were summarized by the Assistant District Attorney at the guilty plea and sentencing hearing, as follows:[3]

> On January 25, 2017, Officer Andrew Herman of the Middletown Township Police Department was dispatched to 18 Cameo Road in Middletown Township, Bucks County for the report of a domestic disturbance.
>
> Dawn Ross relayed that her then 51-year old stepbrother, the defendant Dennis Frye, date of birth 11/25/1965, had been inappropriately touching her 14-year old daughter, N.R., date of birth 11/12/2002, while he was living with them.
>
> Dawn advised that the defendant had been living with them for a long period of time. Dawn's husband, Barry Ross, had been sent to a state correctional facility for 21-and-a-half to 47 years for raping their daughter, N.R., almost daily from the ages of six to 12 years old.
>
> After this occurred, the defendant volunteered to move in and help Dawn out with her five children. N.R. made Dawn aware that the defendant had been acting inappropriately towards her via text messages, sexual conversations and touching her private areas.

---

[2] A hearing on the post sentence motions was scheduled for December 29, 2017, but continued at the request of Appellant. See *N.T.* 2/2/18.
[3] N.T. 11/20/17, pp. 23-28.

2

Your affiants learned the following through investigation and interviews: N.R. advised that the defendant frequently talked to her inappropriately, stating that he was in love with her and he wants to run away with her, and that he wants to marry her.

He often asked her about the details of her abuse at the hands of her father and would get jealous or angry if she said that she missed him. N.R. further stated that the defendant had touched her on her breasts, upper thighs near her vagina and on her buttocks several times. This would occur almost every day since the defendant moved in to her home in Bucks County.

The defendant frequently bought N.R. gifts, including a cell phone. Since at least October of 2016, the defendant had been texting her cell phone from his phone with phone number (215) 436-2966. The defendant told N.R. to erase these messages so nobody could see them.

The following are some of the many inappropriate messages he would send to N.R.:

When are you going to kiss me?
Why do you make me crazy?
My deductible is $250. The only way you're getting this phone is to become my baby.
I know who's not banging up there. Us.
I'm still in love with you.
Soon you'll get a boy and I'll be history.
I'll be home later and you better behave or you're going to get a spanking.
Will you be my baby?
Mmm, this cookie is almost as delicious as you. I mean your sweet chocolate ass.
I don't like sharing your love with anyone else.
I can't live without you.
Marry me.
I might terrorize your ass later. LOL.
Come lay with me.
I got your pussy rubbing all over me.
I can't just turn off my feelings for you.
Wait until you hear my dream about you and me. It was freaky.

During this period of abuse, N.R. began cutting her body. In response to that, the defendant would be texting her things such as:

Now I'm going to have to check your whole body. LOL.
Some teens get random drug tested.
You're going to get random strip searched.

3

The defendant would also call N.R. names such as, quote, Bitch and Skank, via text.

N.R. described a time when the defendant came into her room and told her that he had a dream about her being aggressive with him and having sex with him in the shower. N.R. detailed how the defendant would say and text her uncomfortable things and then come into her room and rub her buttocks or breasts.

When she would push him away or say no, he would get angry and threaten to turn off her phone. The defendant has repeatedly told N.R. that he wants to have sex with her. She has repeatedly told him no.

Dawn Ross confronted the defendant and he admitted to attempting to show N.R. what good touch/bad touch was. On February 9, 2017, Affiants Torrente and Strother met with the defendant. During this meeting, Detective Torrente called the telephone number from which N.R. was receiving the text messages. When she did so, the cellular telephone located in the defendant's right front pant's pocket rang. The defendant advised that this was the phone he was using to communicate with N.R.

Detective Strother looked at the phone and noticed that the defendant had deleted all of the text messages between himself and N.R. A forensic download of that phone recovered those deleted messages.

The defendant admitted in the later interview he was sexually attracted to N.R., and that he sent her those sexual messages.

## III.   STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

On March 12, 2018, Appellant filed his Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rules of Appellate Procedure Rule 1925(b). Appellant raised the following issues, *verbatim*:

1. The sentence was excessive considering Petitioner's remorse, guilty plea and need for treatment.
2. Sentencing Appellant consecutively raised the aggregate sentence to, what appears upon its face to be an excessive level considering Frye's background and criminal conduct at issue in this case. 42 Pa. C.S. 9781(c)(2); Commonwealth v. Mastromarino, 2 A.3d 581, 588 (Pa. Super. 2010).
3. The Court failed to take these factors into account along with Appellant's rehabilitative needs and sentenced only on the nature of the offenses.

4

4. Petitioner was improperly sentenced consecutively on solicitation to commit statutory sexual assault and unlawful contact, as the offenses should have merged for sentencing purposes.
5. Reliance on the Commonwealth's claim that the complainant was required to engage in treatment and attempted suicide as a result of Appellant's conduct was unsupported.

## IV.    DISCUSSION

Appellant complains of five alleged errors in this appeal. The question, whether two of his convictions merge for sentencing purposes, is the only issue regarding the legality of the sentence. All other claims are challenges to the discretionary aspects of sentencing and interrelated. Therefore, we shall begin with the question of merger and the legality of the sentence.

Appellant claims his convictions for Solicitation to Statutory Sexual Assault and Unlawful Contact with Minor -- Sexual Offenses merge for sentencing purposes. Therefore, according to Appellant, our decision to run sentences on those convictions consecutive to each other is improper and an error of law. This issue was raised in post-sentence motions and argued before us. In his argument, Appellant conceded his position was contrary to prevailing Pennsylvania case law, particularly Commonwealth v. Evans, 901 A.2d 528 (Pa. Super. Ct. 2006). Nonetheless, Appellant urged us to "adopt more of a common sense approach and look at the nature of the evil to be covered by the sentence."

The controlling law is set forth in 42 Pa.C.S.A § 9765:

### Merger of Sentences

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

Both convictions at issue involve one count of criminal conduct by Appellant against the victim, from May 1, 2016 until January 27, 2017. Each conviction is supported by hundreds of

5

distinct criminal acts committed over an almost nine month period of time. Each of these offenses could stand on their own for completely different distinct criminal acts. As stated in Commonwealth v. Pettersen, 49 A.3d 903, 912 (Pa. Super. Ct. 2012) (quotations and internal citations omitted):

> When considering whether there is a single criminal act or multiple criminal acts, the question is not "whether there was a 'break in the chain' of criminal activity." Rather, the issue is whether "actor commits multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime, then the actor will be guilty of multiple crimes which do not merge for sentencing purposes."

Clearly, in this case, Appellant committed "multiple criminal acts beyond that which is necessary to establish the bare elements of the additional crime." Accordingly, Appellant's convictions do not merge for sentencing purposes.

Additionally, in this case, all of the statutory elements of one offense are not included in the statutory elements of the other offenses. More specifically, Criminal Solicitation to Commit Statutory Assault requires a specific type of act (e.g., command, encouragement, or request) not required by the crime of Unlawful Contact. In other words, there can be Unlawful Contact that is not a Criminal Solicitation to Commit Sexual Assault. Similarly, there can be a Criminal Solicitation to Commit Sexual Assault that is not an Unlawful Contact. Accordingly, Appellant's convictions do not merge for sentencing purposes.

Appellant also challenges the discretionary aspects of his sentences. Such an appeal is considered a petition for permission to appeal, petition for permission to appeal, Commonwealth v. Buterbaugh, 91 A.3d 1247, 1265 (Pa. Super. Ct. 2014), appeal denied, 628 Pa. 627 requiring Appellant to raise a substantial question for appellate review. Commonwealth v. Baker, 72 A.3d

6

652 (Pa. Super. Ct. 2013), appeal denied, 624 Pa. 679 (Pa. 2014). We respectfully submit a substantial question for appellate review has not been raised in this case.

Appellant claims our sentence was excessive considering his remorse, guilty plea and need for treatment. We believe Appellant showed little or no remorse for his actions in this case. This is obvious in his statement at sentencing:

| The Court: | "Mr. Frye, my understanding is you wish to make a statement?" |
|---|---|
| Defendant: | "Yeah, that I'm sorry Nicole. I never meant for this to get out of hand, and I just want to put this behind me and move forward with my life. And that I apologize. And she's not –she'll never know how much." |
| The Court: | "All right. Anything else you wish to say?" |
| Defendant: | "No. Just that, show some mercy." |

At the time of this statement, Appellant appeared indifferent and disinterested. His demeanor was cavalier and defiant. We commented on this hearing on post sentence motions:[4]

> The Court: . . . I will tell you that one of the reasons I granted the Motion for Reconsideration was what particularly struck me during the sentencing in this matter was your client's complete lack of remorse. And I always give people credit for acceptance of responsibility when they enter a plea of guilty and accept responsibility.
>
> Your client struck me, however, by his appearance, by his obvious lack of remorse, that he thought he was being unjustly prosecuted in this case. And I gave him the benefit that he may have not represented himself well because of the pressure or stress of the situation and upon reflection may wish to present additional evidence in that regard. And that is why I granted the Motion for Reconsideration, to permit him that opportunity, because as I stated and as the Commonwealth writes in their response, this crime was heinous.
>
> I mean, re-victimizing a person who you know is a victim, but who you put yourself in a position to assist that person and then engaging in the exact conduct that you are supposed to be helping them overcome was –in my mind, certainly justified the sentence.

As stated above, we considered and gave Appellant credit for his plea of guilty and acceptance of responsibility. It was obvious Appellant felt no remorse or penitence. He felt sorry

---

[4] N T. 2/2/2018, p. 8, 9

7

only for himself. He wanted to put this behind him and move on with his life. His only regret was getting caught.

Appellant's attorney described him as a veteran of the National Guard who graduated from high school and a trade school. He was a fifty-two (52) year old father of three with a long history of stable employment. He had been in Bucks County Prison for almost nine (9) months where he worked as a babysitter and had no misconducts.[5] Appellant chose not to present testimony or evidence of any kind acknowledging his need for treatment. He did not consider or participate in the many programs or other treatment options at the Bucks County Prison during his lengthy pre-trial detention. At best, Appellant did not know why he committed the crimes at issue. At worst, he did not care. Accordingly, when we considered his rehabilitative needs, we focused on his obvious need for a sex offender assessment and treatment. Our experience is the best programs for sex offender assessment and treatment are within the state correctional system. Accordingly, contrary to Appellant's claim, we did consider his lack of remorse and unspecified need for treatment in the determination of his sentence. As with all offenders, we gave him credit for his decision to accept responsibility and enter a plea of guilty.

Appellant next claims our decision to impose consecutive sentences raised the aggregate sentence to an excessive level considering his background and the criminal conduct at issue in this case. He cites Commonwealth v. Mastromarino, 2 A.3d 581 (Pa. Super. Ct. 2010) in support of this claim. He further claims we failed to consider factors set forth in Mastromarino along with his rehabilitative needs and sentenced solely on the nature of the offense. Mastromarino decided the key to resolving the substantial question inquiry in a challenge to the discretionary aspects of a sentence is whether the decision to sentence consecutively raises the aggregate sentence to, what

---

[5] N.T. 11/20/2017, p. 33-35

8

appears on its face to be, an excessive level in light of the criminal conduct at issue in the case. In Mastromarino, the Court concluded an aggregate sentence of not less than twenty-five (25) nor more than fifty-eight (58) years in prison is neither grossly disparate to the defendant's conduct nor does it "viscerally appear as patently 'unreasonable'." The charges underlying the aforesaid sentence were related to the unlawful sale of body parts from human corpses.

In this regard, Appellant asserts his criminal conduct at issue somehow mitigates in his favor. Nothing could be further from the truth. Appellant took advantage of a bad situation and made it worse. He manipulated his way into a position of authority and trust within his stepsister's family. He used this position for his personal benefit and the detriment of all others. He sexually assaulted his 13 year old niece regularly and repeatedly for over eight (8) months. He knew she was the victim of previous sexual abuse by her father. He used this knowledge to manipulate and control her. He regularly professed his romantic love for her. He told her of his sexual fantasies involving her. He bought her a cell phone and threatened regularly to take it away if she didn't do what he wanted. He called her disgusting names. When his victim finally cried out for help by cutting herself and attempting suicide, he blasted her mother for failing her. Appellant did not reduce or diminish his constant requests for sex during his victim's treatment for physical or mental health issues. He never admitted his conduct to anyone. He obstructed true help for his victim at every opportunity. Appellant lied about everything. He had no remorse for anything.

We imposed an aggregate sentence of not less than seven and one half (7 ½) nor more than fifteen (15) years in a state correctional institution. Our sentence was within the statutory limits. It was also within the recommended ranges of the sentencing guidelines on three (3) of the four (4) counts comprising the aggregate sentence. In the fourth count, we sentenced below the mitigated range of recommended sentences. Appellant ignores the fact he was convicted of two

9

separate felonies of the first degree. The sentencing guidelines based on these convictions are within Level 4. This level targets very serious offenders and those with numerous prior convictions. "The primary purposes of the sentencing options at this level are punishment and incapacitation."[6] The Sentencing Code clearly states a sentence may be imposed either consecutively or concurrently.[7] Each of our individual sentences represented a sanction for multiple distinct criminal acts that occurred regularly and repeatedly over an eight month period. The imposition of these sentences consecutive to each other is not a mistake. Appellant is not entitled to a volume discount for crimes. Commonwealth v. Hoag, 665 A.2d 1212 (Pa. Super. Ct. 1995).

Ultimately, Appellant is seeking credit for his background even though he has a prior record score of five[8] because it could be worse. Similarly, he wants credit for his criminal conduct because it could be worse. Somehow he believes he should receive positive consideration for his long term, persistent solicitation of a thirteen year old for sex that had devastating consequences for all concerned because it could be worse.

Appellant's aggregate sentence in this case is consistent with the stated purpose of sentencing guidelines and therefore reasonable. Our sentence is not grossly disparate to Appellant's underlying criminal conduct nor does it viscerally appear as patently unreasonable.

Appellant also alleges we improperly relied on the Commonwealth's unsupported declarations the victim was required to engage in treatment and attempted suicide as a result of his conduct. He cites no corroboration or other support for this allegation. Nonetheless, his claim is incorrect. Appellant was appropriately sentenced pursuant to the factors and considerations in the

---

[6] 204 Pa. Code § 303.1.1(b)(4)
[7] 42 Pa.C.S.A. § 9721(a)
[8] Representing connections for seven (7) distinct criminal acts over the past twenty-five (25) years.

Sentencing Code. More specifically, as already discussed in this Opinion, we considered: the sentencing guidelines; Appellant's conduct, including his knowledge and relationship with the victim, a thirteen (13) year old minor; Appellant's criminal history; Appellant's compete lack of remorse; and Appellant's need for treatment. *See* Commonwealth v. Walls, 592 Pa. 557 (2007). We also considered the impact of this crime on the life of the victim:

> In this case I need to consider – it's one of the guidelines – the gravity of the offense as it relates to the impact on the life of the victim, and I don't know if I can imagine a case, a situation, that would impact the life of the victim, more, or more negatively, than the conduct of this defendant in this case.

> This is a victim of a prior violent sexual assault over a number of years, and the defendant knew that. And the defendant volunteered to help in the situation, volunteered to help his stepsister's family recover from a devastating, devastating impact of criminal conduct. And using that ruse to gain entry into the family, the defendant then just engaged in conduct that seems almost incomprehensible. Victimizing a victim? And continuing to commit that conduct for months on end, continuing to commit that conduct after the victim has been hospitalized three times, being the only other person that knows what's going on, when a victim is cutting themselves and attempting suicide, and to then blame that conduct on another person who is a family member. It shakes your faith in human beings. There's absolutely no grounds that could possibly excuse or justify this conduct. The victim did nothing to induce or facilitate it.

Pursuant to the Sentencing Code,[9] after having regard to the nature and circumstances of the crime and the history, character, and condition of Appellant, we decided total confinement in a state correctional facility for a significant period of time was necessary. This decision was made because (1) there is undue risk that during a period of probation or partial confinement the Appellant will commit another crime; (2) Appellant is in need of correctional treatment that can be provided most effectively by his commitment to a state correctional institution; and (3) a lesser sentence will depreciate the seriousness of the crime of the Appellant.

---

[9] 42 Pa.C.S.A. § 9725

11

## V. CONCLUSION

*WHEREFORE*, for the foregoing reasons, it is respectfully submitted this Honorable Court **DENY** and **DISMISS** the relief requested by Appellant.

BY THE COURT:

DATE: 3/29/2019

RAYMOND F. McHUGH, J.

N.B. it is your responsibility
to notify all interested parties
of the above action.

RECEIVED
2019 MAR 29 - P 4: 04
BUCKS COUNTY
CLERK OF COURTS

12