J-A04013-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| P.B.P., | : | |
| | : | |
| Appellant | : | No. 3026 EDA 2018 |

Appeal from the Judgment of Sentence Entered September 21, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): No.: CP-51-CR-0007568-2016

BEFORE:    MCCAFFERY, J., STRASSBURGER, J.* and COLINS, J.*

MEMORANDUM BY STRASSBURGER, J.:              **FILED JUNE 22, 2020**

P.B.P. (Appellant) appeals from the September 21, 2018 aggregate judgment of sentence of 15 to 30 years of incarceration following his convictions for rape of a child, involuntary deviate sexual intercourse (IDSI), endangering the welfare of a child (EWOC), corruption of a minor, and unlawful contact with a minor, for offenses committed against his daughter, P.H.-N.  Upon review, we affirm Appellant's convictions, affirm in part and vacate in part his judgment of sentence, and remand for resentencing.

The trial court set forth the following recitation of facts in its Pa.R.A.P. 1925(a) opinion.

> When [P.H.-N.] was 10-11 years[]old, she lived with Appellant, her father, for between three and five months, starting in about December of 2014.  Prior to that time [P.H.-N.] had not really had a relationship with Appellant.  The house where they lived was uninhabitable on the first floor.  The second floor consisted of three bedrooms.  The rear one was, for

*Retired Senior Judge assigned to the Superior Court.

a period, occupied by a couple. The middle one was [P.H.-N.'s] room, but she didn't sleep there because there was no bed in the room. Appellant and [P.H.-N.] slept in the third bedroom, which was in the front of the house. There was no operable kitchen. Appellant and [P.H.-N.] shared a bed.

At some point after they had been living together for two or three months, Appellant asked [P.H.-N.]: "Do you want me to show you what I did to your mother?" Thinking he meant a hug, [P.H.-N.] said yes. Appellant then removed [Victim's] clothes and touched her chest, buttocks and crotch with his penis. He put his penis in her butt. Appellant engaged in this conduct every night. Appellant also put his penis in [P.H.-N.'s] mouth on more than one occasion.

When [P.H.-N.] would tell Appellant that she did not want to engage in this behavior, Appellant would get mad and tell her that she did[ no]t love him. When [P.H.-N.] would tell Appellant "no[,]" he would tell her that he would not feed her. Appellant carried through on this threat on some occasions when [P.H.-N.] told him no, and did not feed her. [P.H.-N.] did not tell anyone what her father was doing to her because she was scared and Appellant told her not to tell anyone.

In approximately April of 2015, [P.H.-N.] went to live with [G.A.], at the request of Appellant. [In the summer of 2015, P.H.-N. asked G.A. about inappropriate touching, but did not disclose the aforementioned sexual acts at that time.]

In October of 2015, [P.H.-N. was taken to Children's Hospital for vaginal pain, discharge, and bleeding. While at the hospital, P.H.-N. disclosed the aforementioned sexual acts. Consequently, she underwent an examination and her complaint was referred] to the Department of Human Services [(DHS). P.H.-N. also underwent an additional exam at the hospital's care clinic. The examination revealed no injuries.] The lack of such evidence is not conclusive as to whether or not a sexual assault involving penetration occurred.

[P.H.-N.] described Appellant's conduct to the social worker [at the hospital]. She also gave a forensic interview at the Philadelphia Children's Alliance [(PCA)], which interview was [videotaped and] witnessed remotely by the social worker and a Philadelphia Police Special Victims Unit [(SVU)] Detective.

- 2 -

Trial Court Opinion, 2/1/2019, at 2-3 (record citations and some quotation marks omitted).

Based upon the foregoing, Appellant was arrested and charged with, *inter alia*, the aforementioned crimes. On April 30, 2018, Appellant proceeded to a jury trial solely on the aforementioned charges. At trial, the Commonwealth presented testimony from P.H.-N.; G.A.; SVU Detective William Brophy; Melinda Brown, DHS social worker; Denise Wilson, manager of forensic services at PCA;[1] and Dr. Natalie Stavas, an expert in child abuse and pediatrics. The jury also viewed P.H.-N.'s videotaped PCA forensic interview. At the conclusion of the trial, the jury found Appellant guilty as indicated hereinabove.

Sentencing was deferred for a pre-sentence investigation (PSI) and mental health evaluation. On September 21, 2018, the trial court sentenced Appellant to the following terms of incarceration: 10 to 20 years for rape of a child, 10 to 20 years for IDSI, 5 to 10 years for EWOC, 5 to 10 years for corruption of minors, and 5 to 10 years for unlawful contact with minors. The 10-to-20-year terms were set to run concurrently to each other and consecutively to the 5-to-10-year terms, which were set to run concurrently

---

[1] Wilson testified from PCA's business records at Appellant's jury trial regarding P.H.-N.'s forensic interview at PCA because the individual who conducted the interview was on maternity leave. N.T., 5/1/2018, at 105.

to each other. Thus, Appellant received a total aggregate sentence of 15 to 30 years of incarceration.

On September 27, 2018, Appellant timely filed post-sentence motions challenging the weight of the evidence and the discretionary aspects of his sentence. The trial court denied the motions on October 10, 2018.

This timely-filed appeal followed.[2] On appeal, Appellant challenges the sufficiency and weight of the evidence, the denial of his motion *in limine* to exclude evidence about Appellant's ownership of weapons, and the discretionary aspects and legality of his sentence.[3] Appellant's Brief at 14-18.

We begin with Appellant's sufficiency and weight claims, as they are interrelated. On appeal, Appellant purports to raise distinct claims challenging the sufficiency and weight of the evidence. *See* Appellant's Brief at 14-15, 44-53 (claiming evidence was insufficient to support verdict); *id.* at 15-16, 53-56 (claiming the verdict was against the weight of the evidence). However, upon review, it is evident that Appellant is only challenging the weight of the evidence.

_____

[2] Both Appellant and the trial court have complied with the mandates of Pa.R.A.P. 1925.

[3] Although Appellant challenges the legality of his sentence for the first time on appeal, it is not waived. *See Commonwealth v. Infante*, 63 A.3d 358, 363 (Pa. Super. 2013) ("As long as the reviewing court has jurisdiction, a challenge to the legality of the sentence is non-waivable[].") (citation omitted).

Appellant's sufficiency claim does not challenge specific elements of his convictions.[4]   Rather, Appellant assails P.H.-N.'s testimony as inconsistent, speculative, conflicting, and uncorroborated.   Based upon **Commonwealth v. Farquharson**, 354 A.2d 545 (Pa. 1976), Appellant asserts that P.H.-N.'s testimony could not provide sufficient evidence to sustain his convictions, rendering the guilty verdicts based thereon pure conjecture.   Appellant's Brief at 47-52.

Our Supreme Court has held that a challenge to a verdict based upon **Farquharson** challenges the weight of the evidence, not the sufficiency. **See, e.g., Commonwealth v. Sanchez**, 36 A.3d 24, 37 (Pa. 2011) (citing **Commonwealth v. DeJesus**, 860 A.2d 102 (Pa. 2004)) (noting that a "challenge to verdict pursuant to **Farquharson** is to weight, not sufficiency, of the evidence").   Therefore, as Appellant's sufficiency claim is really a

_____

[4] Neither Appellant's Pa.R.A.P. 1925(b) statement, nor his appellate brief, states which elements of which crimes the Commonwealth failed to prove beyond a reasonable doubt.

> We have repeatedly held that [i]n order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's [Rule] 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient. …   Therefore, when an appellant's 1925(b) statement fails to specify the element or elements upon which the evidence was insufficient[,] ... the sufficiency issue is waived on appeal.

**Commonwealth v. Ellison**, 213 A.3d 312, 320-21 (Pa. Super. 2019) (citations and quotation marks omitted).   Accordingly, insofar as Appellant attempts to raise a distinct sufficiency claim, it is waived.

challenge to the weight of the evidence, we do not address the sufficiency of the evidence, and instead turn to his weight challenge.

"A verdict is against the weight of the evidence 'where certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Commonwealth v. Williams*, 176 A.3d 298, 312 (Pa. Super. 2017) (quoting *Commonwealth v. Lyons*, 833 A.2d 245, 258 (Pa. Super. 2003)). We examine challenges to the weight of the evidence according to the following standard.

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. When a trial court considers a motion for a new trial based upon a weight of the evidence claim, the trial court may award relief only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. The inquiry is not the same for an appellate court. Rather, when an appellate court reviews a weight claim, the court is reviewing the exercise of discretion by the trial court, not the underlying question of whether the verdict was against the weight of the evidence. The appellate court reviews a weight claim using an abuse of discretion standard.

*Commonwealth v. Jacoby*, 170 A.3d 1065, 1080 (Pa. 2017) (citations and quotation marks omitted).

Here, Appellant argues that the guilty verdicts were against the weight of the evidence because they were based solely on P.H.-N.'s allegedly "conflicting and vague testimony," which "was not corroborated by anyone else or any other evidence." Appellant's Brief at 55. Appellant contends

that he was "convicted solely on [P.H.-N.'s] speculative, unreliable and contradictory testimony" that suggested someone known as "Uncle Tommy" actually committed the acts,[5] and that therefore "[t]his verdict should shock one's conscience." *Id.* at 55-56.

In its opinion, the trial court noted that it observed P.H.-N.'s testimony and found it to be credible.

> Her failure to remember specific dates, or more narrowly define time periods[,] was consistent with her tender years. As to the details of Appellant's conduct, her testimony was credible. Her description of Appellant's sexual assault was consistent on the stand and, in all relevant respects with her prior statements to the DHS social worker, to the medical personnel at Children's Hospital, and to the forensic interviewer at [PCA].

Trial Court Opinion, 2/1/2019, at 7. After reviewing the record and having been in a position to have listened to the testimony at trial, the trial court determined that it was "in no way shocked by the verdict, which was based

---

[5] At trial, evidence was introduced that P.H.-N. disclosed being sexually abused by Appellant, as described hereinabove, as well as separately being sexually abused by an individual known to her only as Uncle Tommy. The sexual acts attributed to Uncle Tommy were distinct from Appellant's in nature, time, and location. Thus, the jury could determine whether or not P.H.-N. was sexually abused by Appellant independent of any conclusions it may have drawn about Uncle Tommy because believing the accusations against Uncle Tommy did not preclude or compel a finding of guilt against Appellant. As instructed by the trial court, the jury could find that Appellant committed the crimes charged and Uncle Tommy did not, that Uncle Tommy committed the crimes charged and Appellant did not, that both Appellant and Uncle Tommy committed the crimes charged, or that neither Appellant nor Uncle Tommy committed the crimes charged. N.T., 5/2/2018, at 60.

upon the credible and not[-]meaningfully[-]impeached testimony of [P.H.-N.]." *Id.*

"At trial, the jury was the ultimate fact-finder and the sole arbiter of the credibility of each of the witnesses." *Jacoby*, 170 A.3d at 1080. "A jury is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit." *Id.* Appellant cross-examined P.H.-N. extensively regarding her delayed reporting, potential bias against Appellant, prior inconsistent statements, and accusations against Uncle Tommy. *See* N.T., 5/1/2018, at 36-53. The jury was permitted to credit the testimony of P.H.-N. notwithstanding some inconsistencies with her prior statements. Assessing all of the evidence according to the governing principles cited above, we conclude that the trial court did not abuse its discretion when it denied Appellant's weight claim, and therefore Appellant is not entitled to relief.

Appellant next argues that the trial court erred in denying his motion *in limine* to preclude evidence from P.H.-N.'s videotaped interview that Appellant had guns in the house. Appellant's Brief at 56-57.[6] We review this claim mindful of the following.

---

[6] On appeal, Appellant also argues that the trial court erred in denying his motion *in limine* to preclude evidence from P.H.-N.'s videotaped interview that Appellant had knives and swords in the house. Appellant's Brief at 56-57. However, at the pre-trial hearing on this motion, Appellant specifically stated that he was "not objecting to anything coming in about the knife or
*(Footnote Continued Next Page)*

The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. [A]n evidentiary error of the trial court will be deemed harmless on appeal where the appellate court is convinced, beyond a reasonable doubt, that the error could not have contributed to the verdict.

***Commonwealth v. Manivannan***, 186 A.3d 472, 479-80 (Pa. Super. 2018) (citations and quotation marks omitted).

Prior to trial, Appellant sought to exclude the portion of P.H.-N.'s interview that mentioned Appellant having "guns and everything in the house.'" N.T., 4/30/2018, at 32. On appeal, Appellant argues that the trial court erred in not excluding this portion of the interview because, according to Appellant, this evidence attributed unrelated criminal activity to Appellant, thereby tainting the jury. Appellant's Brief at 58. Appellant argues that there was no indication that P.H.-N. was threatened with guns, and therefore the trial court erred in concluding the statement was admissible "to show that it might have affected [P.H.-N.'s] delay in reporting because she

*(Footnote Continued)* ────────────

the sword" because P.H.-N. mentioned those items as "part of her allegations in this case[.]" N.T., 4/30/2018, at 31-32. As such, Appellant has waived any challenge to the introduction of P.H.-N.'s statement as to the knife and sword, and we limit our analysis of this claim to P.H.-N.'s statement regarding guns. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

was scared." *Id.* at 60. Appellant contends that because there was no purpose to have guns in the house, any mention of them really "would be to show someone who had a propensity to commit a crime or was depraved. This would surely taint the jury in a case where the evidence was very questionable." *Id.*

In denying Appellant's motion *in limine*, the trial court found that the statement was relevant to P.H.-N.'s state of mind, and that its probative value was not outweighed by its prejudicial effect. N.T., 4/30/2018, at 33. In its Rule 1925(a) opinion, the trial court further explained its ruling as follows.

> The relevance of the testimony was not that Appellant had guns and knives or swords in the house, but rather that [P.H.-N.] **believed** there were guns, knives or swords in the house. This belief went to her state of mind of fearing Appellant and not telling family, friends or others that he was sexually abusing her. The defense, as demonstrated by the cross-examination of [P.H.-N.] and [] Austin, as well as the defense opening [statement] and closing [argument], was that the failure to promptly report the assaults was a sign of lack of credibility. The fact of [P.H.-N's] fear[] and the factors that may have caused her to feel such fear are relevant under the facts of this case. Whether there were actually such guns, knives or swords is not the issue. It is only [P.H.-N.'s] mental state, and the reasons therefore, that is relevant and, in this case, admissible.

Trial Court Opinion, 2/1/2019, at 8 (emphasis in original).

At trial, the Commonwealth played the entirety of P.H.-N.'s interview, which was approximately 50 minutes in length. During the interview, P.H.-N. mentioned several times that Appellant tried to hurt her and that she was

worried he would hurt her if she told anyone. As referenced *supra*, she detailed how Appellant threatened her with a knife or sword the first time he sexually assaulted her. During the 50-minute interview, P.H.-N. referenced guns during a 15-second statement in response to the interviewer's question about where the threatening knife came from. **See** N.T., 5/1/2018, at 106-07 (Exhibit C-11 (time stamp 11:35:37-11:35:52)).

We agree with the trial court that the overarching statement about Appellant's ownership of various bladed weapons was relevant to P.H.-N.'s state of mind and explanation for her delayed reporting. The fleeting reference therein to guns, which lasted mere seconds in an almost hour-long interview and was part and parcel of P.H.-N.'s answer about the knife, was not unduly prejudicial to Appellant. Moreover, we note that contrary to Appellant's assertions, gun ownership is not tantamount to evidence of criminal activity or depravity. Accordingly, we conclude the trial court did not abuse its discretion in denying Appellant's motion *in limine*.

Finally, we address Appellant's sentencing claims. First, Appellant alleges that the trial court abused its discretion in failing to consider mitigating factors and sentencing Appellant outside the sentencing guidelines without providing adequate reasons. Appellant's Brief at 60-61. Such claims challenge the discretionary aspects of Appellant's sentence. **See Commonwealth v. Archer**, 722 A.2d 203, 211 (Pa. Super. 1998). Thus, we consider this claim mindful of the following.

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (some citations omitted).

Appellant has satisfied the first three requirements: he timely filed a notice of appeal, preserved the issue in a post-sentence motion, and included a Pa.R.A.P. 2119(f) statement in his brief. Therefore, we now consider whether Appellant has raised a substantial question for our review.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. ***Commonwealth v. Paul***, 925 A.2d 825, 828 (Pa. Super. 2007). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Griffin***, 65 A.3d at 935 (citation and quotation marks omitted).

- 12 -

In Appellant's Pa.R.A.P. 2119(f) statement, he contends that a substantial question exists because the trial court failed to consider mitigating factors and failed to provide adequate reasons for imposing an excessive sentence outside the guidelines range. Appellant's Brief at 41-43. These issues present a substantial question, and we will therefore review the merits of these arguments. *See Commonwealth v. Mulkin*, ___ A.3d ___, 2020 WL 610939 at *2 (Pa. Super 2020) (concluding Mulkin raised substantial question by asserting that the sentencing court failed to consider mitigating evidence when imposing an aggravated-range sentence).

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> * * *
>
> When imposing [a] sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

*Commonwealth v. Antidormi*, 84 A.3d 736, 760-61 (Pa. Super. 2014) (internal citations and quotation marks omitted).

At the sentencing hearing, the trial court heard argument from Appellant's counsel and the Commonwealth. On Appellant's behalf, the trial court also heard from Appellant, Appellant's girlfriend, and Appellant's

friend. On behalf of P.H.-N., the trial court heard from her foster mother.

Prior to imposing the aforementioned aggregate sentence, the trial court

provided the following explanation.

> I've considered the arguments of both counsel, the [PSI] report, the sentencing guidelines report, [Appellant's] allocution, the testimony of the defense witnesses, as well as the particular circumstances of this case and [the letter from P.H.-N.'s foster mother]. This court notes as mitigating factors that the guidelines although rightfully high somewhat overstate [Appellant's] criminal history since his prior record score of four is comprised mainly of relatively minor theft offenses that are not recent. An important mitigating factor of this court is [Appellant's] advanced age,[7] his physical condition, which includes a rupture at L3, L4 discs, history of prior substance abuse and mental history, PTSD, anxiety, *et cetera*. The court also notes that today he is wheelchair bound with medical needs that may never be fully addressed within the Department of Corrections.
>
> On the other hand, in addition to the gravity of the offenses he's been convicted of, this court will consider as an aggravating factor the long-lasting effect on [P.H.-N.], and, to the extent that the victim of any crime such as this would be long-lasting, in this case the court notes that [Appellant's] conduct was protracted and lasted for years.
>
> The following sentence will hold [Appellant] accountable while taking into account his rehabilitative needs, the effect on [P.H.-N.], and the need to protect society, which unusually is somewhat of a minor circumstance in this case given where [Appellant] is now. This court places heavy emphasis on [Appellant's] advanced age because time means more to him than anyone else. Given the circumstances, this will turn out to be a life sentence. That's inevitable if we are to hold him accountable.

N.T., 9/21/2018, at 26-27 (unnecessary capitalization omitted).

---

[7] At the time of sentencing, Appellant was 67 years old.

We note that the trial court erroneously stated that Appellant's conduct lasted for years, when the evidence indicated that it lasted for less than one year. However, the record indicates that the trial court reviewed the sentencing guidelines, the PSI report, the testimony and letters offered, and specifically considered Appellant's mitigating factors, placing "heavy emphasis on [Appellant's] advanced age[,]" prior to imposing the sentence. *Id.* Thus, it is evident that the trial court considered mitigating factors and stated its reasoning for the imposed sentence. Accordingly, Appellant is not entitled to relief on his discretionary-aspects-of-sentencing claim.

Finally, we address Appellant's claim that the sentences imposed on his EWOC and corruption of minors convictions are illegal. "Issues relating to the legality of a sentence are questions of law[.] … Our standard of review over such questions is *de novo a*nd our scope of review is plenary." ***Commonwealth v. Cardwell***, 105 A.3d 748, 750 (Pa. Super. 2014) (citation omitted). "[A] sentence that exceeds the statutory maximum is illegal. If a court imposes a sentence outside of the legal parameters prescribed by the applicable statute, the sentence is illegal and should be remanded for correction." ***Infante***, 63 A.3d at 363 (citations and quotation marks omitted).

Appellant was convicted of EWOC and corruption of minors as felonies of the third degree. ***See*** 18 Pa.C.S. § 4304(b)(1)(ii); 18 Pa.C.S. § 6301(a)(1)(ii). Section 1103 of the Crimes Code sets the maximum

sentence of imprisonment permissible for felonies of the third degree at not more than seven years. 18 Pa.C.S. § 1103(3). Accordingly, we agree with Appellant that his sentences of five-to-ten years of imprisonment for EWOC and corruption of minors are illegal, and remand for resentencing on those counts. *See Commonwealth v. Eberts*, 422 A.2d 1154, 1156 (Pa. Super. 1980) (*per curiam*) ("Where a case requires a correction of sentence, this [C]ourt has the option of either remanding for resentencing, or amending the sentence directly.").

Convictions affirmed. Judgment of sentence affirmed in part and vacated in part. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/22/20