J-S22041-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                                  :                PENNSYLVANIA
                                                  :

v.                                                   :

CLINTON WADE MARZEL             :

       Appellant                :      No. 1184 WDA 2023

Appeal from the Judgment of Sentence Entered August 28, 2023
In the Court of Common Pleas of Allegheny County
Criminal Division at CP-02-CR-0004761-2021

BEFORE:   PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:               **FILED: JULY 23, 2024**

Appellant, Clinton Wade Marzel, appeals from the judgment of sentence of 18 to 36 months' incarceration, followed by 2 years' probation, imposed after he was convicted of terroristic threats, 18 Pa.C.S. § 2706(a)(1), and harassment, 18 Pa.C.S. 2709(a)(4). Appellant challenges the discretionary aspects of his sentence, claiming that the trial court failed to consider his rehabilitative needs as required by 42 Pa.C.S. § 9721(b). After careful review, we affirm.

The trial court summarized the facts and procedural history as follows:

On May 3, 2021, police officers responded to a residence at 1617 Manor Avenue in McKeesport. [Appellant], who resided next door, made a verbal threat to Holly Potter, who resided at 1617 Manor Avenue with her three children. Ms. Potter had called police approximately 15 times over the past year and a half because of [Appellant's] repeated threats of violence and other conduct toward her family. Ms. Potter informed police that [Appellant] had been driving back and forth in front of her vehicle screaming and

yelling that he was going to hit her vehicle. Ms. Potter had a Ring Doorbell video surveillance system that confirmed [Appellant's] conduct. On the day the police responded to Ms. Potter's residence, [Appellant] yelled, "if she gets me sent to jail, I will kill her." He had made other threats of violence to her family as well. For instance, he posted a sign in his window that he was going to kill Ms. Potter "and her bastard children." He further told her he was "the modern Manson" and that her family would repent. This [c]ourt convicted [Appellant of the offenses] … set forth above.

At [Appellant's original] sentencing [hearing on June 23, 2022], the Commonwealth presented the testimony of Ms. Potter and her son, Hunter Thomas. Ms. Potter testified that for over eight years, [Appellant] harassed, stalked and terrorized her and her three young children. Her six-year[-]old daughter has difficulty sleeping and sees a therapist because of [Appellant's] malicious actions toward her family. Her 17-year[-]old son, Hunter, also has difficulty sleeping because of [Appellant's] conduct. Hunter testified that he refused to visit his father because he did not want to leave his mother and baby sister alone in the house. [Appellant] made numerous threats of violence and even death against his family. Ms. Potter installed a video surveillance system to protect herself from the actions of [Appellant]. She testified that [Appellant's] actions have caused such fear and anxiety that her family had difficulty functioning normally and that she suffers from post-traumatic stress disorder as a result.

Trial Court Opinion (TCO), 1/17/24, at 2-3.

At the close of the June 23, 2022 hearing, the court imposed the aggregate sentence set forth *supra*. Appellant timely appealed, and this Court vacated the judgment of sentence and remanded for resentencing, after concluding that the trial court had erred by failing to determine Appellant's eligibility under the Recidivism Risk Reduction Incentive (RRRI) Act, 61 Pa.C.S. §§ 4501-4512. **See Commonwealth v. Marzel**, 303 A.3d 762 (Pa. Super. 2023) (unpublished memorandum).

On August 28, 2023, the trial court determined that Appellant is not RRRI eligible, and imposed the same sentence, *i.e.*, 18 to 36 months' incarceration. Appellant filed a timely but unsuccessful post-sentence motion. Appellant then filed a timely notice of appeal and complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed its Rule 1925(a) opinion on January 17, 2024. Appellant presents one issue for review: "Whether the [t]rial [c]ourt failed to apply all relevant sentencing criteria, including the protection of the public, the gravity of the offense, and [Appellant's] character and rehabilitative needs, as required by 42 Pa.C.S. § 9721(b), thus making his sentence excessive and unreasonable?" Appellant's Brief at 5.

Appellant challenges the discretionary aspects of his sentence.

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. ***Commonwealth v. Sierra***, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> We conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006).... Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. ***Commonwealth v. Mann***, 820 A.2d 788, 794 (Pa. Super. 2003)....

- 3 -

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra*, *supra* at 912–13.

*Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (quoting

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010)).

Here, Appellant filed a timely notice of appeal, preserved his sentencing claim in a post-sentence motion, and included a Rule 2119(f) statement in his brief. *See* Appellant's Brief at 20. Therein, Appellant maintains his sentence is excessive because "the [t]rial [c]ourt focused on the gravity of the offense as it relates to the impact on the life of the victim at the expense of the other required sentencing factors under 42 Pa.C.S.[] § 9721(b)[,]" namely, Appellant's rehabilitative needs. *Id.* at 22 (citation to the record and quotation marks omitted). We agree with Appellant that this argument constitutes a substantial question for our review. *See Commonwealth v. Johnson-Daniels*, 167 A.3d 17, 27 (Pa. Super. 2017) ("[The a]ppellant's assertion in his Rule 2119(f) statement that his aggregate sentence 'does not comport with the protection of the public, gravity of the offense, and his rehabilitative needs,' raises a substantial question.") (citing, *inter alia*, *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (holding "an excessive sentence claim – in conjunction with an assertion that the court failed to consider mitigating factors – raises a substantial question.");

***Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (concluding "[a]ppellant's challenge to the imposition of his consecutive sentences as unduly excessive, together with his claim that the court failed to consider his rehabilitative needs upon fashioning its sentence, presents a substantial question").

Accordingly, we proceed to the merits of Appellant's sentencing issue, mindful that,

> [s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Shugars***, 895 A.2d 1270, 1275 (Pa. Super. 2006).

The Sentencing Code requires that the trial court fashion a sentence consistent with "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). In this case, Appellant insists that the court failed to adhere to section 9721(b), focusing entirely on the impact of his offense on the victims and the risk his release might pose to their safety, while ignoring Appellant's rehabilitative needs. He maintains that,

> at no point did the [t]rial [c]ourt thoughtfully discuss [Appellant's] mental health issues, drug addictions, or the rehabilitation that he needed … to become a productive, law-abiding member of society. Indeed, the [t]rial [c]ourt's mention of his mental health issues

- 5 -

was to underscore its doubt about whether they even contributed to his criminal behavior. Although the [t]rial [c]out briefly mentioned the [presentence investigation (PSI) report], such perfunctory references rebut the presumption that the [t]rial [c]ourt adequately analyzed it. Given these circumstances, [Appellant's] sentence, like the appellant's in [**Commonwealth v.**] **Coulverson**, [34 A.3d 135 (Pa. Super. 2011),] "cannot be described as 'individualized' in any meaningful way." **Coulverson**, 34 A.3d at 150.

Appellant's Brief at 32.

After carefully reviewing the record, we disagree with Appellant. First, as Appellant mentions, the trial court had the benefit of a PSI report.[1] Thus, we must presume the court "was aware of the defendant's character and rehabilitative needs, and weighed those considerations with the other mitigating statutory factors." Appellant's Brief at 25 (citing **Commonwealth v. McCain**, 176 A.3d 236, 243 n.3 (Pa. Super. 2017)). Second, as the Commonwealth points out, Appellant acknowledges that his defense counsel "actively argued on his behalf about his mental health needs." Commonwealth's Brief at 9 (citing Appellant's Brief at 14). For instance, at the original sentencing on June 23, 2022, defense counsel informed the court that Appellant had been diagnosed with schizophrenia and has "significant mental health issues…." N.T., 6/23/22, at 12. Defense counsel stressed that

---

[1] In fact, the court had the benefit of two PSI reports because, at Appellant's original sentencing in June of 2022, the court also sentenced Appellant for a probation revocation in an unrelated case. The court was provided with a 20-page PSI report for the instant case, as well as a 7-page PSI report for his revocation case. **See** N.T., 6/23/22, at 3.

Appellant "very much needs treatment and he is not going to be able to get treatment if he remains incarcerated." *Id.*

In response, the court explained:

THE COURT: [Defense counsel,] you make a strong argument about the mental health issues. Does that relieve the victims of fear? No. One of the essential issues in this case is protecting identifiable people from harm threatened on them and evils perpetrated on them by [Appellant,] whatever his motives are. … It is also the victim[s] being the primary beneficiary of that consideration but[,] to some extent [I consider Appellant]. If he acts on his threats, his life is going to get a lot worse. If you say a mental health component is what is fueling it, that is not exactly something we can predict with certainty, can we?

***

[Defense Counsel]: Judge, we can't predict it. We can treat it. He is willing to engage in treatment.

THE COURT: Ye[s], from his home next door to the victims who he's threatened, [and] likened himself to Charles Manson.

***

The main thing is his unpredictable conduct related to the [victims].

This is not a case where [Appellant] is going home today or … to a treatment center where he can walk out any time he wants. I don't want to do that. The issue is whether this is a county sentence or a state sentence. That is what the issue is to me.

*Id.* at 17-19.

The court and the parties then discussed available treatment options in county prison versus a state correctional institution (SCI). In arguing for county incarceration, defense counsel stressed that Appellant was receiving "the treatment he very much needs" through his work with Justice Related

Services (JRS), which would "continue to work with him" **only** if "he receives a county sentence…." *Id.* at 19. Defense counsel insisted that if the court "imposes a state sentence, [JRS] will close him out and there is a far less likelihood [Appellant will] get the treatment he needs" at an SCI. *Id.*

When the court questioned defense counsel's claim that Appellant would not get adequate treatment at an SCI, a representative from JRS advised the court that JRS is involved in some capacity with SCI inmates, but the representative did not have the knowledge to provide further details. *Id.* at 20-21. Accordingly, the court offered defense counsel a continuance "to do a further investigation on what is available" in terms of treatment at an SCI compared to the county prison, and expressed it would be "willing to listen to that." *Id.* However, defense counsel did not pursue a continuance. *Id.* at 21-22.

For the second time, the court sentenced Appellant to 18 to 36 months' incarceration. *Id.* at 23. The court ended the hearing by declaring that it would "stay the effect of the sentence [in this] case for ten days … to allow counsel [time] to investigate any matter with regard to treatment in the state system and time to file a motion to modify sentence…." *Id.* Ultimately, Appellant filed a timely post-sentence motion for modification of his sentence, reiterating that JRS would only continue working with him if he were sentenced to county prison, and that he has "significant mental health needs that will not be served by incarceration in a[n SCI]." Post-Sentence Motion, 6/30/22, at 3

(unnumbered). However, Appellant proffered no facts or further information to support these claims.

Moreover, when the court held a hearing on Appellant's post-sentence motion, defense counsel did not call any witnesses or present any evidence regarding treatment options, or purported lack thereof, at an SCI. Instead, counsel stated that it "remains [Appellant's] position that prison will not serve [Appellant's] treatment needs," and referred the court to the JRS "service plan that has already been a part of the court record." N.T., 8/16/22, at 3. The Commonwealth countered "that state prison has adequate services to address [Appellant's] mental health needs, just as well as Allegheny County Jail has," and emphasized that Appellant's sentence "was fair and just given the circumstances of this case and [Appellant's] prior criminal history…." *Id.* Ultimately, the court concluded that, although the defense had made "a valid point about the rehabilitative needs of [Appellant]," the court "had to balance[] … [Appellant's] rehabilitative needs against the safety of [a] particular member [of the community] who is directly next door." *Id.* at 5. The court stressed that Appellant had "terrorized this victim. He absolutely terrorized her … and he terrorized her family." *Id.* at 6-7. Thus, it denied his motion to modify his sentence.

Finally, at Appellant's resentencing on August 28, 2023, defense counsel informed the court that Appellant had participated in "extensive programming offered by the prison[,]" including "parole education, a violence prevention program, as well as a batterer's intervention program." N.T., 8/28/23, at 4.

The court "applaud[ed] his attempts at ... participating in programs," but again stressed that Appellant "absolutely terrorized his next-door neighbor." *Id.* at 8. The court reiterated it was "unwilling to take a chance" that the safety of the victims would be jeopardized by a lesser sentence, and imposed the same term of incarceration. *Id.* at 9.

Contrary to Appellant's argument, this record convinces us that the trial court adequately considered his rehabilitative needs. The court had the benefit of two PSI reports, and it repeatedly discussed with the parties Appellant's mental-health and treatment needs. The court acknowledged the validity of Appellant's argument that treatment was necessary, but questioned defense counsel's position that treatment at an SCI would be inadequate. The court expressed willingness to further consider evidence to support counsel's claim, and offered counsel additional time to investigate. Nevertheless, defense counsel did not request a continuance, and at the hearing on Appellant's motion to modify his sentence, counsel did not present any evidence that an SCI could not meet Appellant's rehabilitative needs.

These facts distinguish this case from the "scant consideration of anything other than the victim impact and the court's impulse for retribution on the victim's behalf" that compelled our decision in *Coulverson*. *Coulverson*, 34 A.3d at 148. Here, the trial court considered Appellant's rehabilitative needs but concluded, upon balancing the proper statutory factors, that the victims' safety was paramount. To the extent Appellant is displeased with the court's decision, we emphasize that the "weighing of

factors under 42 Pa.C.S. § 9721(b) [is] exclusively for the sentencing court, and an appellate court could not substitute its own weighing of those factors." ***Commonwealth v. Bricker***, 41 A.3d 872, 876 (Pa. Super. 2012) (quoting ***Commonwealth v. Bowen***, 975 A.2d 1120, 1123 (Pa. Super. 2009) (citation omitted)).  Thus, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 07/23/2024